Ronald G. SANDISON; and Craig M. Stanley, Plaintiffs–Appellees,

v.

MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Defendant–Appellant,

Rochester Community Schools; and Grosse Pointe Public School System, Defendants.

No. 94–2106.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1995.

Decided Sept. 12, 1995.

Richard J. Landau (argued and briefed), Dykema, Gossett, Spencer, Goodnow & Trigg, Ann Arbor, MI, for plaintiffs-appellees.

Edmund J. Sikorski, Jr. (argued and briefed), Ann Arbor, MI, for defendant-appellant.

Before NELSON and RYAN, Circuit Judges; ECHOLS, District Judge.*

RYAN, Circuit Judge.

Ronald Sandison and Craig Stanley, two recent graduates of Michigan public high schools, filed this action against their respective high schools and the Michigan High School Athletic Association (MHSAA) alleging claims under, *inter alia,* the Rehabilitation Act of 1973, 29 U.S.C. § 794, and titles II and III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132, 12182. Each student suffers from a learning disability, and before reaching high school each fell behind the typical school grade for children of his age. The plaintiffs started their senior years in Fall 1994, but by then had turned nineteen years old. The MHSAA, of which the plaintiffs' high schools are members, prohibits students who turn nineteen by September 1 of the school year to compete in interscholastic high school sports. In the district court, the plaintiffs won preliminary injunctive relief. We DISMISS as moot the challenge to that portion of the preliminary injunction ordering that the high schools and the MHSAA permit the plaintiffs to run on the cross-country and track teams, and RE-VERSE that portion of the preliminary injunction ordering the MHSAA refrain from penalizing the high schools for permitting the plaintiffs to participate.

### I.

When he was four years old, Ronald Sandison was placed in a special preschool program for learning disabled children because he had difficulty processing speech and language. Sandison started ungraded kindergarten at age six, rather than at the usual age of five, and it was not until age seven that Sandison was considered a student in graded kindergarten. This two-year delay placed Sandison two school grades behind his age group. At age eleven, Sandison was diagnosed with auditory input disability, which hampers Sandison's ability to distinguish between similar sounds. With the help of special education support, Sandison attended Rochester Adams High School in regular classrooms and graduated in June 1995. Sandison ran on Adams's cross-country and track teams during his first three years of high school. He turned nineteen years old in May 1994, a few months before starting his senior year.

Due to a learning disability in mathematics, Craig Stanley repeated kindergarten and then spent five years in a special education classroom. Stanley made the transition into regular classrooms by entering the fourth grade, rather than the fifth grade, after those five years in special education. Accordingly, Stanley is two school grades behind his age group. With the help of special education support, Stanley has attended Grosse Pointe North High School in regular classrooms and graduated in June 1995. Stanley ran on his high school's cross-country and track teams during the first three years. He turned nineteen years old in May 1994, a few months before starting his senior year.

Like most high schools in Michigan, Rochester Adams and Grosse Pointe North are members of the MHSAA. Members of the

---

* The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennes- see, sitting by designation.

MHSAA agree to adopt the MHSAA's rules governing interscholastic sports. MHSAA Regulation I § 2 forbids students over nineteen years old from playing interscholastic sports:

> A student who competes in any interscholastic athletic contests must be under nineteen (19) years of age, except that a student whose nineteenth (19th) birthday occurs on or after September 1 of a current school year is eligible for the balance of that school year. Any student born before September 1, 1975, is ineligible for interscholastic athletics in Michigan.

No waiver of the age requirement is permitted. MHSAA Handbook, Art. VII, § 4E.

On August 18, 1994, the plaintiffs sued the Rochester and Grosse Pointe school systems, and the MHSAA, under the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12182; the federal Constitution, 42 U.S.C. § 1983; and the Michigan Handicappers' Civil Rights Act, Mich.Comp.Laws Ann. §§ 37.1101–1607. Sandison and Stanley alleged that excluding them from playing interscholastic sports amounted to unlawful disability discrimination. In late August 1994, the district court granted the plaintiffs a temporary restraining order permitting the students to run in immediately upcoming interscholastic cross-country races. The plaintiffs then moved in early September for a preliminary injunction, which the district court entered. *Sandison v. Michigan High Sch. Athletic Ass'n,* 863 F.Supp. 483 (E.D.Mich.1994).

First, the district court restrained all three defendants from preventing the plaintiffs from participating in interscholastic cross-country and track competition. Second, the district court enjoined the MHSAA from sanctioning Rochester Adams and Grosse Pointe North for permitting the plaintiffs to participate in interscholastic meets. The district court explained that it relied only on the Rehabilitation Act and the ADA to support the preliminary injunction.

The district court first reasoned that two titles of the ADA, as well as the Rehabilitation Act, applied to the claim against the MHSAA. The district court held that, by managing interscholastic athletic events, the MHSAA operated "place[s] of education" and "place[s] of entertainment" under title III of the ADA, §§ 12181–89, which generally prohibits disability discrimination in places of "public accommodation." In addition, the district court relied on Michigan law and the MHSAA's membership to conclude that the MHSAA was a "public entity" under title II of the ADA, §§ 12131–34. Finally, the district court held that the MHSAA indirectly received federal financial assistance under the Rehabilitation Act, § 794.

As for the remaining elements of a disability discrimination claim under the Rehabilitation Act and the ADA, the district court held that the plaintiffs were disabled, "otherwise qualified," and discriminated against solely on the basis of their disabilities. The MHSAA does not dispute the finding of "disability" on appeal. The district court concluded that the plaintiffs were "otherwise qualified" because permitting the plaintiffs to participate would not thwart the purposes of the age restriction. The district court reasoned that the age limit had two purposes: (1) to safeguard other athletes against injuries arising from competing against overage, and thus oversized, athletes; and (2) to prevent overage athletes from gaining an unfair competitive advantage. Accordingly, waiver of the age limit for Sandison and Stanley was a "reasonable accommodation" because the plaintiffs played a noncontact sport and were not "'star' players." The MHSAA appealed the issuance of the preliminary injunction. However, neither Rochester Adams nor Grosse Pointe North appealed; both schools have supported the plaintiffs' position from the start.

## II.

### A. Mootness

■ Before reviewing the preliminary injunction, we point out that the controversy over the first part of the preliminary injunction—requiring the defendants to permit Sandison and Stanley to participate in track meets—is moot. The 1995 track season has ended, and thus the plaintiffs will have no more races to run. The "capable of repeti-

tion yet evading review" exception to mootness does not apply to these plaintiffs because the exception requires not only that " 'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration,' " but also that " 'there was a reasonable expectation that the *same* complaining party would be subjected to the same action again.' " *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (*per curiam*) (emphasis added) (quoting *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 187, 99 S.Ct. 983, 992, 59 L.Ed.2d 230 (1979)). At oral argument, we learned that Sandison and Stanley graduated from high school in June 1995, which precludes the repetition of another controversy over whether these same plaintiffs may run on their high school teams.

■ However, the second part of the preliminary injunction—ordering the MHSAA to refrain from penalizing the high schools for permitting the plaintiffs to compete—is not moot. When an age-ineligible player competes on a high school team, MHSAA Regulation 5 § 4(B), (D) provide for penalties such as forfeiture of team victories and erasure of individual performances. Sandison and Stanley of course still have an interest in preventing the MHSAA from erasing their teams' victories and their own performances. Accordingly, this controversy remains live.

### B. Standard for Reviewing Preliminary Injunctions

■ We review the district court's issuance of a preliminary injunction for "abuse of discretion." *In re Eagle–Picher Indus., Inc.,* 963 F.2d 855, 858 (6th Cir.1992). In determining whether the district court abused its discretion, we review the district court's findings of fact for clear error and its legal conclusions *de novo. Id.* "A legal or factual error may be sufficient to determine that the district court abused its discretion. However, absent such an error, the district court's weighing and balancing of the equities is overruled 'only in the rarest of cases.' " *Id.*

(quoting *NAACP v. City of Mansfield,* 866 F.2d 162, 166 (6th Cir.1989)).

■ We consider four factors in determining whether the district court abused its discretion in issuing the preliminary injunction: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 98 (6th Cir.1982). "It is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced and *not prerequisites* that must be satisfied. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle–Picher,* 963 F.2d at 859 (emphasis added) (citation omitted).

### III.

### Rehabilitation Act of 1973

We first discuss the plaintiffs' claim under section 504 of the Rehabilitation Act of 1973. In its current form, the section provides in pertinent part:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a) (as amended 1992). A cause of action under section 504 comprises four elements:

(1) The plaintiff is a "handicapped[1] [disabled] person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap [disability]; and

---

**1.** In 1992, the term "disability" was substituted for "handicap." Rehabilitation Act Amendments of 1992, Pub.L. 102–569, § 102(p)(32)(A), (B), 106 Stat. 4344 (1992).

(4) The relevant program or activity is receiving Federal financial assistance.[2]

*Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988) (footnotes added), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). In this case, the plaintiffs are unlikely to succeed on the merits of the second and third elements.[3]

## A. "Solely by Reason of" Disability

■ Taking the latter element to start, we hold that the plaintiffs are not, in the words of the statute, "be[ing] excluded from the participation in … any program or activity" "*solely by reason of … his disability.*" 29 U.S.C. § 794(a) (emphasis added); *accord Cavallaro v. Ambach,* 575 F.Supp. 171, 175 (W.D.N.Y.1983); *Mahan v. Agee,* 652 P.2d 765, 768 (Okla.1982). Few cases explain the meaning of the term "solely by reason of" disability, but we garner guidance from one of the Supreme Court's earliest section 504 cases, *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), and a subsequent case relying on *Davis* to interpret statutory language similar to "solely by reason of," *Wimberly v. Labor and Industrial Relations Commission of Missouri,* 479 U.S. 511, 107 S.Ct. 821, 93 L.Ed.2d 909 (1987). In *Davis,* the plaintiff applied for entry into a state college's nursing degree program, completion of which would qualify her for certification as a registered nurse. However, the plaintiff's severe hearing disability prevented her from successfully understanding oral communication unless she could use her lipreading skills. The college denied admission into the nursing program, relying on the conclusion of the state nursing board's executive director that the plaintiff could not safely participate in the clinical training program. 442 U.S. at 401–02, 99 S.Ct. at 2365. The district court too found that the plaintiff could not safely perform registered nursing duties in situations precluding lipreading, such as when physicians and other nurses wore surgical masks.

In holding that section 504 did not mandate that the college provide the plaintiff with individual faculty supervision or to dispense certain required courses entirely, the Court explained that section 504 does not require "affirmative action," *id.* at 410, 99 S.Ct. at 2369, that is, "substantial changes," *id.* at 411 n.10, 99 S.Ct. at 2369 n.10, such as a "fundamental alteration in the nature of a program" or changes "imposing undue financial and administrative burdens," *id.* at 410, 412, 99 S.Ct. at 2369, 2370. Rather, section 504 demands "evenhanded treatment of qualified handicapped persons." *Id.* at 410, 99 S.Ct. at 2369.

In *Wimberly,* the Court relied in part on *Davis* to interpret a provision in the Federal Unemployment Tax Act directing that " 'no person shall be denied [unemployment] compensation under such State law *solely on the basis of pregnancy* or termination of pregnancy.' " 479 U.S. at 514, 107 S.Ct. at 824 (quoting 26 U.S.C. § 3304(a)(12)) (emphasis added). The unemployment compensation claimant in *Wimberly* left work due to her pregnancy. State law disqualified from receiving unemployment compensation a person who " 'left his work voluntarily without good cause attributable to his work or to his employer.' " *Id.* at 513, 107 S.Ct. at 823 (quoting Mo.Rev.Stat. § 288.050.1(1) (Supp. 1984)). Although the claimant conceded that the state law "treats pregnant women the same as all other persons who leave for reasons not causally connected to their work or their employer," the claimant asserted that § 3304(a)(12) required that the state provide unemployment benefits to women who leave work because of pregnancy. *Id.* at 516, 107 S.Ct. at 824–25.

---

**2.** We refrain from deciding whether the MHSAA is a "recipient" of federal financial assistance. *Compare Horner v. Kentucky High Sch. Athletic Ass'n,* 43 F.3d 265 (6th Cir.1994) *with Yellow Springs Exempted Village Sch. Dist. Bd. of Educ. v. Ohio High Sch. Athletic Ass'n,* 647 F.2d 651 (6th Cir.1981).

**3.** "[T]he Courts of Appeals have been unable to agree on the proper allocation of burdens of proof in section 504 cases," *Doherty,* 862 F.2d at 573, and we have only expressly placed the burden of proving "reasonable accommodation" on *federal* employers, who are under an affirmative action obligation, *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1080 (6th Cir.1988). Because the burdens of proof would not affect our disposition, we do not resolve those questions here.

The Court held that the state law did not deny unemployment benefits " 'solely on the basis of pregnancy.' " *Id.* First, the Court examined § 3304(a)(12)'s text:

> The focus of this language is on the basis for the State's decision, not the claimant's reason for leaving her job. Thus, a State could not decide to deny benefits to pregnant women while at the same time allowing benefits to persons who are in other respects similarly situated: the "sole basis" for such a decision would be on account of pregnancy. On the other hand, if a State adopts a *neutral rule that incidentally disqualifies pregnant or formerly pregnant claimants as part of a larger group, the neutral application of that rule cannot readily be characterized as a decision made "solely on the basis of pregnancy."*

*Id.* at 516–17, 107 S.Ct. at 825 (emphasis added). The Court explained that the state could apply its disqualification law "without ever knowing that petitioner had been pregnant"; accordingly, "pregnancy was not the 'sole basis' for the decision under a natural reading of § 3304(a)(12)'s language." *Id.* at 517, 107 S.Ct. at 825. To support this conclusion, the Court relied on other cases construing similar statutory language. The Court explained that, in *Davis,*

> we considered § 504 of the Rehabilitation Act of 1973, which provides that an "otherwise qualified handicapped individual" shall not be excluded from a federally funded program "solely by reason of his handicap." We concluded that the statutory language was only intended to "eliminate discrimination against otherwise qualified individuals," and generally did not mandate "affirmative efforts to overcome the disabilities caused by handicaps."

*Id.* at 517–18, 107 S.Ct. at 825 (citations omitted) (quoting *Davis,* 442 U.S. at 410, 99 S.Ct. at 2369).

Similarly, under a "natural reading" of section 504, the MHSAA's disqualification of students who reach nineteen years of age by the specified date "cannot readily be characterized as a decision made," *id.* at 517, 107 S.Ct. at 825, "solely by reason of" each student's respective learning disability. Regulation I § 2 is a "neutral rule"—neutral, that is, with respect to disability—and as far as the record shows, is neutrally applied by the MHSAA. Throughout the plaintiffs' first three years of high school, Regulation I § 2 did not bar the students from playing interscholastic sports, yet the students were of course learning disabled during those years. It was not until they turned nineteen that Regulation I § 2 operated to disqualify them. Accordingly, we must conclude that the age regulation does not exclude students from participating "solely by reason of" their disability. The plain meaning of section 504's text does not cover the plaintiffs' exclusion.

Nevertheless, it remains, for example, an open question whether section 504 forbids recipients of federal financial assistance from engaging in "conduct that has an unjustifiable disparate impact" on the disabled. *Alexander v. Choate,* 469 U.S. 287, 299, 105 S.Ct. 712, 719, 83 L.Ed.2d 661 (1985). In *Choate,* disabled persons receiving Tennessee Medicaid benefits challenged the state's decision to reduce from 20 to 14 the number of inpatient hospital days per year for which benefits would be paid. The plaintiffs brought a disparate impact claim under section 504, proffering in support evidence showing that a disproportionate number of disabled recipients required more than 14 hospital days as compared to nondisabled recipients. *Id.* at 289–90, 105 S.Ct. at 714.

The Court expressly refrained from deciding whether section 504 covers disparate impact claims and refused to resolve the "tension" between one of section 504's objectives—eliminating discrimination resulting from "neglect" of or "apathetic attitudes" toward the disabled—and "the desire to keep § 504 within manageable bounds." *Id.* at 295–96, 299, 105 S.Ct. at 717, 719. Rather, for the purposes of decision, the Court assumed that section 504 required that an otherwise qualified disabled person have "meaningful access" to the Medicaid benefits. *Id.* at 301, 105 S.Ct. at 720. Ultimately, the Court concluded that the state's Medicaid system afforded disabled persons meaningful access, and thus did not violate section 504. However, the possibility remains that section 504 forbids recipients from applying facially

neutral rules that disproportionately exclude members of the class of disabled persons as compared to members of the class of nondisabled persons.

Moreover, we are also aware that we have considered several cases in which the "solely by reason of" disability element was presumably not implicated, and yet the allegedly violative conduct was simply the application of a facially neutral requirement to an individual whose disability prevented him from meeting that requirement. For example, in *Doherty,* the plaintiff suffered from retinitis pigmentosa, which restricted his visual field, and an associated neurological condition, which affected his motor skills. 862 F.2d at 572. The plaintiff attended an optometry school, but could not pass a pathology clinic proficiency class because he could not perform techniques with four required optometrist instruments. *Id.* The student claimed that the optometry school violated section 504 by applying the instrument proficiency requirement to him.

In rejecting this claim, we observed first that "[p]laintiff's neurological condition indisputably prevents him from being able to use the four instruments, thus the critical question is whether proficiency . . . is a necessary requirement of the program." *Id.* at 574. We ultimately concluded that proficiency was indeed necessary and no reasonable accommodation was possible. Beyond mentioning, however, that the student's disability incontrovertibly prevented him from using the instruments, we did not discuss why failure to meet a facially neutral requirement constituted exclusion from the program "solely by reason of" disability. In other cases—albeit employment cases—similarly involving persons whose disability prevented them from satisfying a facially neutral requirement, such as the ability to lift a specified weight, we did not discuss the "solely by reason of" disability element. *See, e.g., Tuck v. HCA Health Servs. of Tennessee, Inc.,* 7 F.3d 465, 473–74 (6th Cir.1993); *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1079 (6th Cir. 1988).

It is understandable that those cases, which seem to exemplify the usual section 504 case, did not mention the "solely by reason of [disability]" element, especially in light of *Choate*'s recognition that discrimination against disabled persons often results from "oversight" and "neglect," rather than invidious animus. But even the situations presented in those cases do not go so far in stretching the statutory words "solely by reason of [disability]" as Sandison and Stanley seek in this case. In *Tuck, Doherty,* and *Hall,* the plaintiffs' disabilities prevented them from meeting the neutral requirements; absent the disabilities, the plaintiffs presumably would meet the requirements. That is, as far as the facts showed (or could show), the student in *Doherty* could successfully use the optometry instruments absent his disability and the plaintiffs in *Tuck* and *Hall* could meet the lifting requirements absent their disabilities. In this case, however, absent their respective learning disability, Sandison and Stanley *still* fail to satisfy Regulation I § 2. The plaintiffs' respective learning disability does not prevent the two students from meeting the age requirement; the passage of time does. We hold that, under section 504, the plaintiffs cannot meet the age requirement "solely by reason of" their dates of birth, not "solely by reason of [disability]."

▮ Finally, we briefly note and reject the plaintiffs' contention that the MHSAA's age requirement violates a Department of Education regulation purporting to implement section 504. The Department's regulation prohibits recipients from "discriminat[ing] on the basis of handicap" in athletic programs and mandates that recipients offering interscholastic sports programs "shall provide to qualified handicapped students an equal opportunity" to participate. 34 C.F.R. § 104.37(c)(1). If we were to read § 104.37(c)(1) as forbidding the MHSAA's age restriction, then the short answer to the plaintiffs' reliance on the regulation is that we have already read section 504 as not plausibly covering the age restriction. The Department's unreasonable interpretation of section 504 would yield to the statutory section. But the terms of § 104.37(c)(1) do not even cover the MHSAA age restriction; the restriction does not discriminate "on the basis of handicap" and the MHSAA does pro-

vide an "equal opportunity" to participate. Again, the age restriction disqualifies an overage nondisabled student just as it disqualifies the overage disabled plaintiffs.

### B. "Otherwise Qualified"

■ We also hold that the district court clearly erred by finding that the plaintiffs are likely to show that they are "otherwise qualified" to participate in interscholastic track and cross-country competition. Specifically, after finding that the plaintiffs are not "star" players and are not an injury risk to other competitors, the district court found that the MHSAA must waive Regulation I § 2 as to Sandison and Stanley in order to reasonably accommodate the plaintiffs. We disagree.

Under section 504, a disabled individual is "otherwise qualified" to participate in a program if, with "reasonable accommodation," the individual can meet the "necessary" requirements of the program. *Doherty,* 862 F.2d at 574–75. Accordingly, in *Doherty,* we examined whether the disabled plaintiff was otherwise qualified for the optometry program by first asking whether the instrument proficiency requirement was "a necessary requirement of the program," *id.* at 574, or more precisely, whether instrument proficiency was a *"reasonably* necessary" requirement, *id.* at 575 (emphasis added). We held that the district court did not clearly err in finding that the requirement was necessary to the optometry program, noting that the district court found that there was a recent increase in the use of the instruments. *Id.* at 574.

Aside from the necessity of the program's requirement, the other question in the otherwise qualified inquiry is " 'whether some "reasonable accommodation" is available to satisfy the legitimate interests of both the grantee and the handicapped person. And since it is part of the "otherwise qualified" inquiry, our precedent requires that the "reasonable accommodation" question be decided as an issue of fact. . . .' " *Id.* at 575 (quoting *Brennan v. Stewart,* 834 F.2d 1248, 1261–62 (5th Cir.1988)). Generally, an "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or requires 'a fundamental

alteration in the nature of [the] program.' " *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n.17, 107 S.Ct. 1123, 1131 n.17, 94 L.Ed.2d 307 (1987) (citations omitted) (quoting *Davis,* 442 U.S. at 412, 410, 99 S.Ct. at 2370, 2369). Specifically, in *Doherty* we affirmed the district court's finding that waiver of the instrument proficiency requirement was not a reasonable accommodation:

> An educational institution is not required to accommodate a handicapped individual by eliminating a course requirement which is reasonably necessary to proper use of the degree conferred at the end of a course of study. Waiver of a necessary requirement would have been a substantial rather than merely a reasonable accommodation.

862 F.2d at 575 (citation omitted).

We join the only other circuit that has decided the "otherwise qualified" question on similar facts, and hold that the MHSAA's age regulation is "necessary" and that waiver of the regulation is not a "reasonable accommodation." In *Pottgen v. Missouri High School Activities Association,* 40 F.3d 926 (8th Cir. 1994), the plaintiff suffered from a learning disability, forcing him to repeat two grades in elementary school. After playing interscholastic baseball during his first three years of high school, the plaintiff turned nineteen before his senior year. An under-nineteen age requirement imposed by Missouri's high school athletic association disqualified the plaintiff from playing in his senior year. *Id.* at 929.

In rejecting the student's claim that the Missouri association's age restriction violated section 504, the Eighth Circuit first found that the restriction constituted "an essential eligibility requirement," citing four reasons: "An age limit helps reduce the competitive advantage flowing to teams using older athletes; protects younger athletes from harm; discourages student athletes from delaying their education to gain athletic maturity; and prevents overzealous coaches from engaging in repeated red-shirting to gain a competitive advantage." *Id.* Next, the court in *Pottgen* found that, given the plaintiff's age, "the only possible accommodation is to waive the essential eligibility requirement itself." *Id.* at 930. The Eighth Circuit rejected waiver as a

reasonable accommodation, concluding that "[w]aiving an essential eligibility standard would constitute a fundamental alteration in the nature of the baseball program." *Id.*

We hold that the district court did not clearly err in finding that Regulation I § 2 is "necessary." 863 F.Supp. at 490. In defending against the preliminary injunction motion, the MHSAA proffered testimony from an expert in physical growth and development. The testimony supports the district court's conclusions that the age restriction advances two purposes: (1) "safeguards against injury" to other players; and (2) "prevents any unfair competitive advantage that older and larger participants might provide." *Id.* The age restriction is a necessary requirement of the interscholastic sports program.

But the district court erred in finding that waiver of Regulation I § 2 constituted a reasonable accommodation. First, we agree with the court in *Pottgen* that waiver of the age restriction fundamentally alters the sports program. Due to the usual ages of first-year high school students, high school sports programs generally involve competitors between fourteen and eighteen years of age. Removing the age restriction injects into competition students older than the vast majority of other students, and the record shows that the older students are generally more physically mature than younger students. Expanding the sports program to include older students works a fundamental alteration.

Second, although the plaintiffs assert that introducing their average athletic skills into track and cross-country competition would not fundamentally alter the program, the record does not reveal how the MHSAA, or anyone, can make that competitive unfairness determination without an undue burden. The MHSAA's expert explained that five factors weigh in deciding whether an athlete possessed an unfair competitive advantage due to age: chronological age, physical maturity, athletic experience, athletic skill level, and mental ability to process sports strategy. It is plainly an undue burden to require high school coaches and hired physicians to determine whether these factors render a stu-

dent's age an unfair competitive advantage. The determination would have to be made relative to the skill level of each participating member of opposing teams and the team as a unit. And of course each team member and the team as a unit would present a different skill level. Indeed, the determination would also have to be made relative to the skill level of the would-be athlete whom the older student displaced from the team. It is unreasonable to call upon coaches and physicians to make these near-impossible determinations.

Finally, we note that there is a significant peculiarity in trying to characterize the waiver of the age restriction as a "reasonable accommodation" of the plaintiffs' respective learning disability. Ordinarily, an accommodation of an individual's disability operates so that the *disability* is overcome and the disability no longer prevents the individual from participating. In this case, although playing high school sports undoubtedly helped the plaintiffs progress through high school, the *waiver* of the age restriction is not directed at helping them overcome learning disabilities; the waiver merely removes the age ceiling as an obstacle.

Accordingly, we conclude that the plaintiffs are unlikely to succeed in pursuing their section 504 claim. The plaintiffs are excluded from participating in interscholastic track and cross-country competition "solely by reason of" age, not disability. Furthermore, waiver of the "necessary" age restriction does not constitute a "reasonable accommodation."

## IV.

### Americans with Disabilities Act

Our analysis of the plaintiffs' ADA claim closely tracks our section 504 analysis. We decline to decide whether the MHSAA is a "public entity" covered by title II, § 12131(1)(A), (B), because it is unnecessary to do so, and proceed directly to the other elements of title II. However, we first emphasize that we do hold that the MHSAA is not covered by title III of the ADA.

## A. Title III of the ADA

■ Generally stated, title III of the ADA, 42 U.S.C. §§ 12181–89, prohibits discrimination on the basis of disability in public accommodations operated by private entities. Section 12182(a) provides a "General rule": "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of *any place of public accommodation* by any person who owns, leases (or leases to), or operates a place of public accommodation." (Emphasis added.) In order to define "public accommodation," § 12181(6) first explains that " 'private entity' means any entity *other than* a public entity (as defined in section 12131(1) of this title)." (Emphasis added.) Then, § 12181(7) provides that "[t]he following *private entities* are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce," (emphasis added), and lists numerous facilities, including places of public gathering, places of recreation, and gymnasiums, § 12181(7)(D), (I), (L).

The Attorney General's regulations implementing title III take a more straightforward path in defining "place of public accommodation." The definition regulation introduces the long list of covered facilities by stating, "*Place of public accommodation* means a facility, *operated by a private entity*, whose operations affect commerce and fall within at least one of the following categories—...." 28 C.F.R. § 36.104 (second emphasis added).

We conclude that the district court erred in holding that title III covers the MHSAA. The text of §§ 12181–82 and § 36.104 compel the conclusion that the applicability of title III turns not so much on *who* is covered: "any person" leasing or operating a place of public accommodation is covered, § 12182(a). The critical inquiry will typically be the nature of the *place* to which the disabled individual alleges unequal access. Title III protects disabled individuals from unequal enjoyment of "place[s] of *public accommodation.*" § 12182(a) (emphasis added). And § 12181(7) and § 36.104 make clear that public accommodations are operated by *private entities,* not public entities. The plaintiffs complain that the MHSAA age eligibility rule precludes them from equally participating in track events held on *public* school grounds or, presumably for cross-country events, in *public* parks. Public school grounds and public parks are of course operated by public entities, and thus cannot constitute public accommodations under title III.[4] Accordingly, we conclude that no "place of public accommodation" is implicated here and title III does not apply.

## B. Title II of the ADA

■ Section 12132 provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Unlike the Rehabilitation Act, title II expressly provides a statutory definition of "qualified individual with a disability"; however, the statutory definition bears some similarity to the case law definition: "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Accordingly, a plaintiff proceeding under title II of the ADA must, similar to a section 504 plaintiff, prove that the exclusion from participation in the program was "solely by reason of [disability]." We again conclude that Sandison and Stanley were excluded by reason of age, not disability. Absent their respective learning disability, the plaintiffs still would not meet the age restriction. The plaintiffs are unlikely to succeed in establishing this element of the title II claim.

■ Nor are the plaintiffs likely to succeed in showing that they are "qualified individual[s]" under §§ 12131(2), 12132. Our

---

4. There are references in the record to competitions held at the Pontiac Silverdome and other arenas operated by private entities, but no evidence suggests that Sandison and Stanley ran anywhere but on public school grounds or in public parks.

earlier conclusion that the age restriction is a "necessary" requirement under section 504 foreordains our conclusion now that Regulation I § 2 is an "essential eligibility requirement[]" under § 12131(2). *Accord Pottgen,* 40 F.3d at 930–31. We also find that waiver of the age restriction does not constitute a "reasonable modification[]" under § 12131(2). *Accord id.* at 931. The daunting task of determining whether an older student possesses an unfair competitive advantage is not a "reasonable modification[]," just as the task is not a "reasonable accommodation." We add only that the word "modification" "connotes moderate change," *MCI Telecommunications Corp. v. AT & T Co.,* — U.S. ——, ——, 114 S.Ct. 2223, 2230, 129 L.Ed.2d 182 (1994), and nothing in the context or structure of title II suggests otherwise. Requiring waiver of the age restriction under the facts of this case would fundamentally change the currently bright-line age restriction.

Finally, the plaintiffs again rely on regulations to support their contention that waiver is required:

> (b)(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

> (8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(7), (8). The first subsection does not alter our conclusion because the plaintiffs are not subjected to "discrimination on the basis of disability," and waiver is not in this case a "reasonable modification[]." § 35.130(b)(7). Furthermore, the age restriction does not prevent the plaintiffs from "fully and equally" enjoying the interscholastic sports program; Regulation I § 2 equally excludes overage, nondisabled students. § 35.130(b)(8). Lastly, although § 35.130(b)(8) might interpret title II to recognize a class-based disparate impact claim, the plaintiffs here did not present this theory at all, and the record contains no hint that the age restriction disproportionately excludes members of the class of disabled students.

## V.

Accordingly, the plaintiffs are unlikely to succeed on the merits of their section 504 and ADA claims. We **DISMISS** as moot the appeal from that portion of the preliminary injunction ordering that the high schools and the MHSAA permit the plaintiffs to run on the crosscountry and track teams; and we **REVERSE** that portion of the preliminary injunction ordering the MHSAA to refrain from entering penalties for the plaintiffs' performance.