JUSTICE GRAY
delivered the Opinion of the Court.
The Montana High School Association (MHSA) appeals from the Findings of Fact, Conclusions of Law and Order of the Second Judicial District Court, Silver Bow County, enjoining it from enforcing the “age rule” against M-H., Jr. (M.H.). We reverse.
The issue on appeal is whether the District Court abused its discretion in granting a preliminary injunction against MHSA.
Section 504 / IDEA
Resolution of this appeal depends, in large part, on the proper interpretation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (§ 504), and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 through § 1491 (IDEA). Because of the importance of these federal statutes in understanding this case, we begin with a general overview of § 504 and IDEA.
Section 504 was enacted to address discrimination against disabled persons. It provides in pertinent part:
No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. ...
*126 29 U.S.C. § 794(a). Section 504 is divided into different subsections which address subject matters ranging from education and employment to social services. See 34 C.F.R. § 104. The § 504 definition of disabled is broad and includes persons who have “physical or mental impairment which substantially limits one or more major life activities.” See 34 C.F.R. § 104.3(j). A student who meets all of the criteria of § 504 must be provided an opportunity to participate in extracurricular activities, such as interscholastic athletic competitions, which is equal to that of other students. 34 C.F.R. § 104.37(a)(1) and (c)(1).
IDEA originally was enacted to address the failure of state education systems to recognize and meet the educational needs of children with disabilities. 20 U.S.C. § 1400. IDEAis much narrower than § 504 with regard to the types of disabilities which are protected. Compare 20 U.S.C. § 1401(a) with 29 U.S.C. § 706(7)(B) and 34 C.F.R. § 104.3(j). For example, IDEA lists specific disabilities, such as mental retardation, blindness and deafness, which qualify a student for IDEA assistance. See 20 U.S.C. § 1401(a)(l)(i). Thus, all students who are qualified under IDEA also fall within the anti-discrimination protections of § 504; however, all § 504 students are not necessarily IDEA-qualified.
State and local education agencies are required to provide children who qualify as disabled under IDEA with free and appropriate public education which means, in part, special education and related services provided in conformity with an individualized education program (IEP). See 20 U.S.C. §§ 1400(c), 1415; 34 C.F.R. § 300.8(d). An IEP, as that term is used in IDEA, is a formal written statement developed for an IDEA-qualified disabled student; an IEP must specify the student’s educational goals, objectives, curriculum and related services and be in effect before special education is provided to the child. See 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.340, 300.342, 300.346.
“Each public agency must provide special education and related services to a child with a disability in accordance with an IEP.” 34 C.F.R. § 300.350. “Related services,” as that term is used in IDEA, includes recreational activities where such activities are required to assist an IDEA-qualified disabled student in benefitting from special education. 20 U.S.C. § 1401(a)(17). Thus, where an IEP contains a requirement for participation in extracurricular activities, for example, interscholastic sports, such participation is encompassed in the student’s guaranteed right to free and appropriate public education. *127 See 20 U.S.C. §§ 1400(c), 1401(a)(17), (18) and (20); 34 C.F.R. §§ 300.1, 300.8, 300.16, 300.350.

Facts

MHSA is a nonprofit association incorporated under the laws of Montana. Membership in MHSA is voluntary and is comprised of various public and private high schools, including Butte High School. MHSA has the exclusive authority to supervise, control, regulate and administer interscholastic activities among member high schools. To that end, MHSA has enacted by-laws and rules governing member high schools, including rules addressing eligibility requirements for participating in interscholastic athletic competitions. MHSA has the power to sanction and penalize a member school which allows an ineligible student to participate in such competitions.
Two MHSA by-laws are at issue here. The first is a by-law commonly referred to as the “age rule.” It provides, in pertinent part, that “[n]o student is eligible to participate in an Association contest [including interscholastic athletic competitions] who has become nineteen (19) years old on or before midnight, August 31, of a given year.” Montana High Sch. Ass’n Official Handbook (1995-1996), ByLaws, Article II, Section (8), p. 19. The second is a by-law entitled “IDEA/SECTION 504 AGE. RULE APPEALS” (IDEA/§ 504 appeals rule) which provides that a “special education” student may appeal an MHSA ineligibility decision made under the age rule. Under the IDEA/§ 504 appeals rule, the appealing student has the burden of proof with regard to six enumerated requirements. See Montana High Sch. Ass’n Official Handbook (1995-1996), By-Laws, Article VII, Subsection (B)(4), p. 31. .
Here, M.H. repeated both kindergarten and the third grade due to difficulties in school. In November of 1985, during his second year in the third grade, M.H. was referred to special education and a Child Study Team (CST) determined that M.H. was “Learning Disabled” due to difficulties with reading and spelling. After completing his freshman year at Butte High School in 1993, M.H. was diagnosed with Attention Deficit Disorder (ADD).
During his freshman through junior years at Butte High School, M.H. competed in both wrestling and football. As a result of repeating kindergarten and the third grade, he turned nineteen prior to beginning his senior year. In May of 1995, just before M.H. turned nineteen years of age, a CST determined that M.H. qualified as a § 504 student *128 due to difficulties in English resulting from his ADD. M.H. did not qualify as a disabled student under IDEA.
Joseph Masolo (Masolo), a § 504 coordinator for the Butte public schools, made written recommendations regarding M.H. in a one-page letter. Specifically, Masolo recommended that M.H. continue to participate in wrestling to insure “academic success for the 1995-96 school [year].” Masolo later stated that his letter was an “IEP” developed pursuant to Montana guidelines for § 504 students. See Montana Office of Public Instruction, Section 504 Guidelines for Educators (1995) (OPI guidelines). Masolo correctly noted, however, that § 504, unlike IDEA, does not require the development of an IEP. He acknowledged that, while OPI guidelines recommend development of an “IEP” for § 504 students, such a § 504 “IEP” can be informal and even verbal. Moreover, Masolo recognized — and it is undisputed in this case — that the recommendations he developed for M.H. fall far short of the requirements for an IEP under IDEA.
On behalf of M.H., Daniel J. Peters (Peters), the principal of Butte High School, petitioned MHSA for waiver of the age rule to allow M.H. to participate in wresting and football during the 1995-1996 school year. MHSA held a telephone hearing on the petition, during which Peters explained that M.H.’s parents requested that the age rule be waived due to M.H.’s ADD. MHSA denied the request.
M.H. appealed MHSA’s decision pursuant to the IDEA/§ 504 appeals rule. MHSA conducted a hearing and received evidence according to the procedure provided for such appeals. See Montana High Sch. Ass’n Official Handbook (1995-1996), By-Laws, Article VII, Subsection (B)(3), p. 30. Thereafter, it denied M.H.’s appeal on the basis that M.H. failed to prove, as required by Article VII, Subsection (B)(4), that: (1) he would not create a safety risk to other players; (2) he would not skew the overall competitiveness of the particular activities in which he would participate; and (3) his participation would not result in the exclusion of other eligible players.
M.H., individually and by his parents, filed a complaint and a motion for a preliminary injunction against MHSA in November of 1995, based primarily on IDEA. MHSA opposed M.H.’s motion for a preliminary injunction. It argued that M.H. had not been classified as a disabled student under IDEA, had not received any services under IDEA, had no IEP under IDEA and, therefore, was not entitled to the rights and protections afforded by IDEA.
The District Court held a hearing on M.H.’s motion for a preliminary injunction. M.H. indicated at the beginning of the hearing that *129 he had spoken with MHSA about his intent to amend his complaint. Although M.H. did not file an amended complaint, he stated that he would be asserting a claim based on § 504 and Article VII, Subsection (B)(4) of the MHSA by-laws; he further indicated that he would be deleting the cause of action based on IDEA. MHSA stated that it had no objection to such an amendment of the complaint. Accordingly, the record before us contains evidence and arguments primarily related to § 504.
The District Court concluded that M.H. had a federally protected right to participate in wrestling for the 1995-1996 school year and that MHSA’s denial of M.H.’s application for a waiver of the age rule was arbitrary and capricious and denied M.H.’s due process rights. Thus, having implicitly concluded that M.H. likely would prevail on his underlying § 504 claim, the court further concluded that M.H. would suffer irreparable injury if MHSA enforced the age rule during the pendency of this case. Accordingly, the court granted M.H.’s motion for a preliminary injunction and enjoined MHSAfrom enforcing the age rule against M.H. MHSA appeals. Additional facts are set forth below where necessary.

Discussion

Did the District Court abuse its discretion in granting a preliminary injunction against MHSA?
Section 27-19-201, MCA, which sets forth when a preliminary injunction may be granted, provides in relevant part:
An injunction order may be granted in the following cases:
(1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
(2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant!.]
An applicant for a preliminary injunction must either establish a prima facie case on the underlying claim or show that it is at least doubtful whether he or she will suffer irreparable injury before an adjudication on the merits. Knudson v. McDunn (1995), 271 Mont. 61, 65, 894 P.2d 295, 298 (citing Porter v. K & S Partnership (1981), 192 Mont. 175, 181, 627 P.2d 836, 839).
*130 Granting a preliminary injunction is within a district court’s discretion, and we will not interfere unless a manifest abuse of discretion is shown. J.M., Jr. v. Montana High School Ass’n (1994), 265 Mont. 230, 235, 875 P.2d 1026, 1030 (citing Frame v. Frame (1987), 227 Mont. 439, 444, 740 P.2d 655, 659). Where, however, the granting of such an injunction is based on a conclusion of law, no discretion is involved and we review the district court’s conclusion of law to determine whether the interpretation of the law is correct. J.M., 875 P.2d at 1030 (citation omitted).

A. Applicability of T.H.

The District Court relied on T.H. v. Montana High Sch. Ass’n (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB, in concluding that M.H. had a federally protected right, by virtue of the “IEP” prepared by Masolo, to participate in wrestling during the 1995-1996 school year. T.H. is distinguishable and, indeed, we distinguished T.H. in J.M. prior to the District Court’s decision in the case presently before us. J.M. is dispositive here with regard to whether, absent an IEP pursuant to IDEA, a learning disabled student has a federally protected right to participate in interscholastic sports.
J.M. involved a Butte Central High School student who repeated the eighth grade due to difficulties in school. As a result, J.M. became ineligible to participate in football and wrestling during his senior year due to MHSA’s maximum participation eligibility requirements. J.M., 875 P.2d at 1028. Two MHSA rules were at issue: the first provided that a student who has attended a secondary school more than eight semesters was ineligible to participate in an Association Contest (eight semester rule); the second provided that “[n]o student shall be eligible to participate in an Association Contest during more than four seasons in any one sport” (four seasons rule). J.M., 875 P.2d at 1028.
MHSA determined that J.M. was ineligible to participate in wrestling and football for the 1993-1994 school year and J.M. appealed. MHSA held an eligibility hearing and subsequently denied J.M.’s request to waive the four season rule for the fall semester, but approved his request for a waiver of the eight semester rule for the spring semester. The basis for MHSA’s decision was that J.M. already had competed in four seasons of fall sports, such as football, but had only competed in three seasons of spring sports. J.M., 875 P.2d at 1029.
J.M. sued MHSA, arguing that he had constitutional and statutory rights under IDEA to participate in fall semester sports. The district *131 court issued a temporary restraining order against MHSA and, as a result, J.M. was permitted to participate in football dining the pendency of his case. Thereafter, MHSA moved to dissolve the restraining order and an evidentiary hearing was held. The district court preliminarily enjoined MHSA from enforcing its four seasons rule against J.M. and from imposing sanctions against Butte Central. Its order was based on IDEA and T.H. J.M., 875 P.2d at 1029.
We discussed T.H. at length in J.M. See J.M., 875 P.2d at 1030-32. T.H. involved a nineteen year old high school student who had an IEP pursuant to IDEA and who became ineligible to participate in interscholastic sports due to MHSA’s age rule. J.M., 875 P.2d at 1030-31. T.H.’s IEP expressly required continued participation in interscholastic sports as a motivational tool. J.M., 875 P.2d at 1031. T.H. sued in federal district court to enforce his rights under IDEA.
The federal district court recognized that, ordinarily, students do not have a constitutional right to participate in interscholastic sports; rather, it is a privilege which may be withdrawn. J.M., 875 P.2d at 1031. It determined, however, that an IDEA-qualified student’s guaranteed right to a free and appropriate public education and related services includes participation in interscholastic sports where such participation is included as a component of the student’s IEP. J.M., 875 P.2d at 1031. On that basis, the court concluded that T.H.’s privilege to participate in interscholastic sports had been transformed into a federally protected right by virtue of his IEP under IDEA and, further, that MHSA denied T.H. due process of law in failing to conduct an appropriate inquiry before depriving T.H. of that right. J.M., 875 P.2d at 1031. Accordingly, the court preliminarily enjoined MHSA from enforcing its age rule against T.H. until an appropriate inquiry could be conducted. J.M., 875 P.2d at 1031. MHSA enacted the IDEA/§ 504 appeals rule and the hearing standards therein in response to T.H. See J.M., 875 P.2d at 1031.
We distinguished T.H. from the situation before us in J.M. Unlike T.H., the student in J.M.
had a specialized educational program, [but] he was not participating in a formal, written IEP established under the statutory and administrative mechanism mandated by IDEA and its implementing regulations.
J.M., 875 P.2d at 1032. Thus, the dispositive elements on which the T.H. court based its conclusion that a federally protected right existed — namely, that the student had a formal, written IEP under IDEA which required his participation in interscholastic *132 sports — were not present in J.M. J.M., 875 P.2d at 1033. We held, therefore, that the district court improperly elevated J.M.’s privilege of participating in interscholastic sports to a federally protected right under IDEA. J.M., 875 P.2d at 1033.
T.H.’s federally protected right to participate in interscholastic sports derived solely from the express requirements of his IDEA IEP. J.M. and the present case share the same dispositive fact which distinguish them from T.H.: in each case, the student did not have an IEP developed pursuant to IDEA which required his participation in interscholastic sports. Consequently, J.M. controls and renders erroneous the elevation of a privilege into a federally protected right, pursuant to an IDEA IEP, in this case. As was the case in J.M., the District Court’s reliance on T.H. under these facts was misplaced.

B. Section 504

The District Court recognized that a “distinguishing feature” of this case, when compared to T.H., is that M.H.’s “IEP” was pursuant to § 504 while T.H.’s was pursuant to IDEA. Based on its review of the OPI § 504 guidelines and a federal regulation, however, the court concluded that “this is a distinction without a difference.” We disagree.
The OPI guidelines provide guidance and set forth recommendations for educators in dealing with § 504 students. The appendix to the OPI guidelines includes the text of 34 C.F.R. § 104.33(b), which defines what constitutes an “appropriate education” under § 504 and provides, in relevant part:
(1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met. ...
(2) Implementation of an [IEP] developed in accordance with [IDEA] is one means of meeting the standard established in paragraph (b)(l)(i) of this section.
As is clear from its express language, 34 C.F.R. § 104.33(b)(2) does not require the development of an IEP for § 504 students. Moreover, neither the foregoing regulation nor the OPI guidelines renders a student’s rights under § 504 and IDEA equivalent. Indeed, they are incapable of doing so because the differences between a student’s rights under § 504 and a student’s rights under IDEA are statutory. We conclude, therefore, that the OPI guidelines and federal *133 regulation relied on by the District Court do not support its determination that the differences between M.H.’s one-page letter “IEP” under § 504 and T.H.’s IDEA IEP is “a distinction without a difference.”
Moreover, recent cases from the United States Circuit Courts of Appeals clarify that § 504 is an anti-discrimination statute which does not confer any special rights on disabled persons beyond the right to be free from discrimination based solely on disability. Pottgen v. Missouri State High Sch. Activities Ass’n (8th Cir. 1994), 40 F.3d 926, involved a Missouri high school student who had repeated two grades in elementary school due to a learning disability and turned nineteen before beginning his senior year of high school. Like MHSA, the Missouri State High School Activities Association (MSHSAA) has an age rule which prohibits a student who turns nineteen prior to a certain date from participating in interscholastic sports. As a result, Pottgen was ineligible to play baseball during his senior year of high school. Pottgen, 40 F.3d at 927-28.
Pottgen petitioned the MSHSAA for a “hardship” waiver since he was held back in school due to learning disabilities. MSHSAA denied his petition and Pottgen sued in federal court based, in part, on § 504. Pottgen, 40 F.3d at 928. The district court granted a preliminary injunction enjoining MSHSAA from enforcing its age rule. Pottgen, 40 F.3d at 928.
In addressing MSHSAA’s appeal, the Eighth Circuit recognized that § 504 prohibits discrimination against an “otherwise qualified individual” on the basis of his or her disability and set forth a two-part test for determining whether a student is an “otherwise qualified individual.” A court must determine both whether the individual meets all of the essential eligibility requirements and whether reasonable modifications exist. Pottgen, 40 F.3d at 929.
The Eighth Circuit concluded that MSHSAA had demonstrated that the age rule is an essential eligibility requirement because
[a]n age limit helps reduce the competitive advantage flowing to teams using older athletes; protects younger athletes from harm; discourages student athletes from delaying their education to gain athletic maturity; and prevents over-zealous coaches from engaging in repeated red-shirting to gain a competitive advantage. These purposes are of immense importance in any interscholastic sports program.
Pottgen, 40 F.3d at 929. However, even though Pottgen could not meet this essential eligibility requirement, he would still be an “otherwise *134 qualified individual” for § 504 anti-discrimination purposes if reasonable accommodations would enable him to meet the age limit. Pottgen, 40 F.3d at 929 (citations omitted).
The Eighth Circuit noted that, since Pottgen already had exceeded MSHSAA’s age limit, the only possible accommodation would be to waive the age rule. It rejected Pottgen’s contention that a waiver would be a reasonable accommodation, however, concluding that the waiver of an essential eligibility standard would constitute a fundamental alteration in the nature of the baseball program and that accommodations which require such a fundamental alteration are not reasonable. Pottgen, 40 F.3d at 930. Observing that “[s] ection 504 was designed only to extend protection to those potentially able to meet the essential eligibility requirements of a program or activity,” the Eighth Circuit held that Pottgen was not an “otherwise qualified individual.” Pottgen, 40 F.3d at 930 (citation omitted).
In Sandison v. Michigan High Sch. Athletic Ass’n (6th Cir. 1995), 64 F.3d 1026, the Sixth Circuit followed the Pottgen analysis of § 504’s “otherwise qualified individual” language in a similar age rule case. See Sandison, 64 F.3d at 1034-35. Sandison involved two Michigan high school students who were held back in school due to learning disabilities and became nineteen prior to beginning their senior year in high school. Under the Michigan High School Athletic Association (MHSAA) age rule, students who become nineteen prior to a certain date are prohibited from participating in interscholastic sports. Sandison, 64 F.3d at 1028.
The students sued MHSAAin federal district court, based on § 504, and the court held that the students were “otherwise qualified” and discriminated against based on their disabilities. The federal district court preliminarily enjoined MHSAA from enforcing its age rule against the students. Sandison, 64 F.3d at 1029.
The Sixth Circuit relied on Pottgen and concluded, on the record before it, that the age rule is a necessary requirement of interscholastic sports programs and that waiver of the rule fundamentally alters such programs. Sandison, 64 F.3d at 1035. The court observed that a “significant peculiarity” exists in attempting to characterize waiver of the age rule as a “reasonable accommodation” of a student’s learning disabilities. Sandison, 64 F.3d at 1035.
Ordinarily, an accommodation of an individual’s disability operates so that the disability is overcome and the disability no longer prevents the individual from participating. In this case, although playing high school sports undoubtedly helped the [students] pro *135 gress through high school, the waiver of the age restriction is not directed at helping them overcome learning disabilities; the waiver merely removes the age ceiling as an obstacle.
Sandison, 64 F.3d at 1035.
The Sixth Circuit also considered the “solely by reason of ... disability” language of § 504 in the context of MHSAA’s age rule. Sandison, 64 F.3d at 1031-33. It noted that the age rule did not preclude the students from participating in interscholastic sports until they turned nineteen and, therefore, the rule was neutral with respect to disability. Sandison, 64 F.3d at 1032. Accordingly, the Sixth Circuit concluded that the age rule does not exclude students “solely by reason of’ their disabilities; rather, it excludes students “‘solely by reason of’ age, not disability.” Sandison, 64 F.3d at 1035.
Both Pottgen and Sandison involved appeals from preliminary injunctions enjoining enforcement of age eligibility requirements for interscholastic sports. In both cases, the Circuit Courts of Appeals held that the preliminary injunctions were improperly granted because the students had virtually no likelihood of success on the merits of their § 504 claims. See Pottgen, 40 F.3d at 930-31; Sandison, 64 F.3d at 1035.
In the present case, the District Court implicitly concluded that M.H. likely would prevail on his underlying § 504 claim. The court then specifically granted the preliminary injunction on the basis that M.H. would suffer irreparable injury if it did not enjoin MHSAffom enforcing its age rule.
The two statutory bases for granting a preliminary injunction at issue here — namely, the “likelihood of success on merits” basis and the “irreparable injury” basis as set forth in §§ 27-19-201(1) and (2), MCA, respectively — are not unrelated. “Injury” is defined as “[a]ny wrong or damage done to another, either in his person, rights, reputation, or property.” Black’s Law Dictionary, 924 (1968). Thus, the irreparable injury basis for granting preliminary injunctions is based on an implicit determination that the applicant is likely to succeed on his or her underlying claim and, as a result, would suffer a “wrong or damage done to ... his person, rights, reputation, or property” if some act were committed or allowed to continue during the litigation.
Similarly, we previously have indicated that a likelihood of success on the merits is not always sufficient, in and of itself, to warrant injunctive relief. See Porter, 627 P.2d at 840. There must also be a showing that, absent a preliminary injunction, the applicant would suffer harm which could not be adequately remedied after a trial on *136 the merits and, therefore, a preliminary injunction is necessary to maintain the status quo and minimize harm to the parties. See Porter, 627 P.2d at 839-40. In other words, the applicant also must make a showing of irreparable harm.
In the present case, the District Court’s conclusion that M.H. would suffer irreparable injury presupposes that enforcement of MHSA’s age rule would constitute a wrong or damage to M.H.’s right to participate in interscholastic sports. As is clear from J.M. and our discussion above, however, participation in interscholastic sports is a privilege, not a right, except in extremely limited circumstances not present here. See J.M., 875 P.2d at 1031-32. Thus, the District Court’s implicit conclusion that M.H. would likely succeed on the merits of his underlying § 504 claim was erroneous.
We previously have indicated that an applicant for a preliminary injunction need not make a case that would entitle him or her to relief at a trial on the merits; an applicant must prove only a probable right and a probable danger that such right will be denied absent injunctive relief. See Porter, 627 P.2d at 840; Boyer v. Karagacin (1978), 178 Mont. 26, 33, 582 P.2d 1173, 1177. Indeed, we consistently have held that district courts cannot issue preliminary injunctions absent the applicant establishing a prima facie case on the underlying claim or, based on the showing made, that it is at least doubtful whether or not the applicant will suffer irreparable injury before adjudication of his or her rights. See, e.g., Porter, 627 P.2d at 839; Boyer, 582 P.2d at 1177-78.
Here, the District Court concluded that M.H. would suffer irreparable injury based on its erroneous conclusion that M.H. had a federally protected right to participate in interscholastic sports. We hold that the District Court erred in concluding that M.H. would suffer irreparable injury and, therefore, that the court manifestly abused its discretion in granting a preliminary injunction against enforcement of MHSA’s age rule. We reverse, dissolve the injunction and remand for such further proceedings as may be appropriate, consistent with this opinion.
JUSTICES NELSON, ERDMANN and LEAPHART concur.