**Raymond T. HOOT, Jr., by his next friend, Rita HOOT, as well as Raymond T. Hoot, Sr. and Rita Hoot, individually, Plaintiffs,**

v.

**MILAN AREA SCHOOLS and Michigan High School Athletic Association, Defendants.**

**No. 93–CV–74138–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 9, 1994.

Richard J. Landau, Ann Arbor, MI, for plaintiffs.

Roy H. Henley, Birmingham, MI, Lisa L. Swem, Lansing, MI, Edmund J. Sikorski, Jr., Ann Arbor, MI, for defendants.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On October 7, 1993, one of the Defendants, Michigan High School Athletic Association (MHSAA), filed a Motion for Summary Judgment in its opposition papers to the Motion for a Preliminary Injunction that had been filed by the Plaintiffs, Raymond T. Hoot, Jr. by his next friend, Rita Hoot, as well as Raymond T. Hoot Sr. and Rita Hoot. On November 17, 1993, the Plaintiffs submitted a response that was supplemented by them on December 8, 1993 with deposition transcripts. Two months later (January 17, 1994), the MHSAA filed an untimely reply brief.

For the reasons that have been set forth below, the MHSAA's motion will be denied.

I

In 1990, a Multidisciplinary Evaluation Team (MET) and an Individualized Educational Planning Committee (IEPC), both of which had been convened by the Milan School District, reached separate and independent decisions with regard to Ray Hoot's status as a student. As the result of the collective evaluation by its members, the MET concluded that Ray Hoot was neither an emotionally impaired student nor did he possess a learning disability, as defined in the Special Education Regulations. The IEPC also declared that he was ineligible to

receive special services as a student within the District.[1]

At the end of his second year in high school, a school psychologist intern, to whom School Superintendent Patricia Dignan had referred Ray Hoot for an intelligence quotient (I.Q.) examination, concluded that he possessed the requisite intellectual capacity to succeed academically in the Milan High School.[2]

During the middle of his third year, Milan High School Principal William T. Matley prescribed a specific code of behavioral conduct which required Ray Hoot to give full compliance to its terms and conditions or face expulsion from school. When Ray Hoot's disruptive deportment in the classroom continued without abatement, he was suspended from school for a period of twenty one days.

By the end of his junior year, Ray Hoot had acquired a .981 grade point average (out of a maximum 4.00) and earned only 9.5 out of 19 possible scholastic credits. In August 1993, Matley notified Ray Hoot's parents that their son would not be offered a day-school schedule at Milan High School in the fall semester of that year, which, in essence, amounted to an expulsion. They were also advised that their son would not be eligible to participate in interscholastic athletics, including football. Dignan subsequently overruled Matley's decision as it related to Ray Hoot's enrollment in school, but did not disturb his ineligible status as an athlete.

The decision by Dignan to deny Ray Hoot an opportunity to participate in athletic competition was based upon the MHSAA Regulation I, § 7(a) which provided as follows:

No student shall compete in any athletic contest during any semester who does not have to his or her credit on the books of the school represented, at least twenty (20) credit hours of work for the last semester during which he or she shall have been enrolled in grades nine to twelve, inclusive.

As a member of the MHSAA, the Milan High School was obligated to comply with the terms of this Regulation or face the imposition of appropriate sanctions. Thus, any game, in which a member school participated and utilized an illegible student, was subject to forfeiture.

During the summer of 1993, Ray Hoot was diagnosed by a clinical psychologist, Geoff Krone, as having an emotional disorder which is commonly known as "Attention Deficit Hyperactivity Disorder (ADHD)". On September 10, 1993, Dignan wrote to the Executive Committee of the MHSAA and requested a waiver of its eligibility requirements for Ray Hoot. Her request was denied. Thereafter, she advised the Plaintiffs that, although the Milan High School was willing to accommodate Ray Hoot's disability if it could be substantiated, the MHSAA's decision regarding his athletic eligibility would be honored.

On September 30, 1993, the Plaintiffs filed a Complaint against the Defendants in this Court, alleging, *inter alia,* violations of (1) the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12101–12213), (2) Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), (3) the Michigan Handicappers' Civil Rights Act (Mich.Comp.Laws.Ann. §§ 37.-1101–37.1606) and (4) the Equal Protection Clause of the Fourteenth Amendment.

Subsequent to the filing of the Complaint, three significant developments occurred: (1) an IEPC convened and determined that Ray Hoot was eligible for special services, (2) Ray Hoot was given a prescribed medication, Ritalin, which was subsequently credited with having assisted him in redefining and improving his social relationships with the students and faculty at the Milan High School, and (3) he became an honor roll student on the basis of a 3.39 grade point average.

Based upon this new evidence, Matley restored the academic credits that Ray Hoot had lost as a result of his earlier violation of

---

1. There exists a genuine dispute among the parties as to whether Ray Hoot's parents knowingly waived their rights to challenge this decision.

2. Dignan said that she had received permission from Ray Hoot's parents prior to the referral to have the intelligence quotient of their son tested

by an intern school psychologist. (Dignan Aff. at ¶ 11.) Thereafter, she discussed the psychologist's conclusions with Rita Hoot who expressed some concern about her son's emotional well-being and performance in school. *Id.* at ¶ 12.

Milan High School's Attendance Policy. (Milan High School's Response to Motion for Reconsideration, December 6, 1993, Exhibit 2 at 2.) As a result of the restoration, Ray Hoot became eligible to compete in interscholastic athletics under the MHSAA rules. Immediately thereafter, the MHSAA was notified of the change in Ray Hoot's academic status by the Milan High School. *Id.* at 4.

The MHSAA's motion is now before the Court for resolution.

## II

In its motion, the MHSAA maintains that the Plaintiffs have failed to state a claim upon which relief can be granted. Specifically, the MHSAA asserts that (1) a student's participation in athletics is not a constitutionally protected right, (2) the eligibility rules relating to athletic participation does not discriminate against a student with a handicap, (3) Ray Hoot is not "otherwise qualified" to play football, and (4) the Association is neither a public entity within the meaning of the ADA nor does it receive federal or state funds. Pointing to its lack of authority to determine the eligibility of any student athlete, the MHSAA contends that it should not be held liable for the failure of the Milan High School to accommodate a disabling condition.

In their opposition papers, the Plaintiffs assert that the MHSAA motion is premature in view of the limited amount of discovery that has been conducted and the absence of their answer to the Complaint. While recognizing that the eligibility rule is facially neutral, they challenge its discriminatory application by the MHSAA. Moreover, the Plaintiffs maintain that (1) Ray Hoot's disability has no bearing on his ability to compete in interscholastic athletics, and (2) the MHSAA should fall within the definition of a "public entity" under the ADA since it can be considered to be a state actor for the purpose of actions under 42 U.S.C. § 1983.

**3.** Fed.R.Civ.P. 56 provides, in pertinent part, that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on filed, to-

## III

Initially, the Court notes that, while the record still lacks an answer from the MHSAA which places the Plaintiffs at a slight disadvantage in defending the motion, there is a sufficient amount of information upon which to resolve the present motion.

Rule 12(b) of the Federal Rules of Civil Procedure permits several defenses to be raised in the form of a motion which include the failure of a party to state a claim upon which relief can be granted. This Rule provides, in part:

If, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

Under Rule 56 of the Federal Rules of Civil Procedure [3], a summary judgment shall be entered if the moving party demonstrates that there is no genuine issue as to any material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company*, 948 F.2d 283 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984). However, it is not the role of the judge to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

1432, 1435–36 (6th Cir.1987). Rather, the judge's function is to determine whether there is a genuine issue for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 249, 250, 106 S.Ct. at 2510–11.

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citations omitted). Federal Rule of Civil Procedure 56(e) provides that an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts which demonstrate that there is a genuine issue for trial. Thus, the mere existence of a scintilla of supporting evidence is insufficient. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). The failure of a party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...." will mandate the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### A—Equal Protection Clause

■ The Equal Protection Clause of the Fourteen Amendment mandates that "no State shall 'deny to any persons within its jurisdiction the equal protections of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The general rule is that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440, 446, 105 S.Ct. at 3254, 3257–58 (rational basis test applies to mentally retarded distinctions).

The MHSAA Regulation I, § 7(a), which governs academic eligibility, provides that:
[n]o student shall compete in any athletic contest during any semester who does not have to his or her credit on the books of the school represented, at least twenty (20) credit hours of work for the las semester during which he or she shall have been enrolled in grades nine to twelve, inclusive.

The Plaintiffs concede that the regulation is neutral on its face, and do not challenge its validity. Instead, they believe that "the application of these regulations to Ray Hoot in light of his disability, in light of [the Milan High School's] failure to follow state and federal law in evaluating him and in light of [the Milan High School's] resulting failure to either detect or accommodate his disability in time to preserve his eligibility." (Plaintiffs' Brief in Support of Preliminary Injunction at 14.)

■ The MHSAA did not address the constitutionality of the alleged discriminatory application of the eligibility rule to Ray Hoot. Hence, a genuine issue of this material fact remains to be resolved. Furthermore, the record now suggests that the Milan School District knew or should have known of Ray Hoot's disability as early as May 1992. (Plaintiffs' Supplemental Brief at 3, Exhibit E.) With the presumed knowledge of Ray Hoot's disability, a genuine issue of a material fact exists as to whether (1) the application of the semester credit hour eligibility requirements violated his constitutional rights under the equal protection clause, and (2) whether the MHSAA supplemented the alleged discriminatory behavior by failing to grant the requested waiver. Pointing to three documents in the record (i.e., Ray Hoot's transcript, a letter of ineligibility from Matley, and a letter from Dignan who indicated that the Milan School District would accommodate any substantiated disability), the MHSAA maintains that the record did not provide its Executive Committee with any foundation upon which to grant a waiver of its eligibility requirements. The MHSAA did not give any credence to the content of Dignan's letter which reads in pertinent part:

[O]n behalf of Milan Area Schools and [student X], we are asking for a waiver for said student to play football for the 1993 season.

. . . .

In August 1993, school officials were informed that student X was diagnosed by a psychologist as having [ADHD]. It is the contention of student X's parents, psychologist and advocates that this condition has impacted deleteriously on his grades, and thus his ability to attain the academic eligibility for interscholastic athletics. Rather than change student X's grades....

Since accommodations will be made for student X as appropriate based on Section 504 in the academic areas, we are requesting that parallel accommodations be allowed through a waiver from your organization. Therefore, student X should be considered as though he is new to Milan High School for purposes of athletic eligibility....

Should you require further information regarding this waiver request or the student's identity, please contact us immediately.

(Plaintiffs' Brief in Support of Motion for Temporary Restraining Order, October 5, 1993, Exhibit E.) Clearly, the Milan School District recognized the presence of Ray Hoot's disability, as well as its obligation to accommodate his disability. Notwithstanding this declaration and acceptance of responsibility by the Milan School District, the MHSAA declined to issue the requested waiver,[4] reasoning that it could not retroactively award credits to a student when the petitioning school district could not do likewise. *Id.* at Exhibit F. In the unusual circumstances in the case at bar, the Milan School District appears to have asked for a waiver of Ray Hoot's eligibility requirements—not a finding of eligibility on the basis of his academic record or a retroactive award of credits to him.

Moreover, the MHSAA seems to have ignored the "ADHD" diagnosis of Ray Hoot by Geoff Krone. Hence, its Executive Committee had all of the pertinent information in its possession which suggested that Ray Hoot's

disabling condition may have warranted an exception to the MHSAA's eligibility rules.

Based on the foregoing, the entry of a summary judgment in favor of the MHSAA on this claim would be inappropriate.

### B—Michigan Handicappers' Civil Rights Act

■ The Michigan Handicappers' Civil Rights Act (Act), Mich.Comp.Laws.Ann. §§ 37.1101–37.1606, prohibits an educational institution from

> discriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

Mich.Comp.Laws.Ann. § 37.1402(a). In order to establish a prima facie claim under this statute, it is incumbent upon the Plaintiffs to demonstrate that:

(1) Ray Hoot is a "handicapped person," as defined by the Act;

(2) Ray Hoot is qualified for the educational opportunity that he seeks despite his handicap; and

(3) In spite of these qualifications, he has not been given an equal opportunity to secure a similar education as other persons.

*Crancer v. Board of Regents,* 156 Mich.App. 790, 795, 402 N.W.2d 90 (1986), *appeal denied,* 428 Mich. 892 (1987).[5]

■ Although it has been determined by the IEPC that Ray Hoot suffers from a disability, a genuine issue of a material fact exists as to whether he was qualified to participate in interscholastic competition during the relevant times in this controversy. *See* discussion infra at 250–51. Moreover, the failure of the MHSAA to address the Plaintiffs' challenge to the alleged discrimina-

---

**4.** The MHSAA regulations provide that any accidental, intentional or other use of an ineligible player would cause the team to forfeit all victories during which the ineligible player participated. MHSAA Handbook 1993–1994, Regulation V, Section IV—Violations and Penalties.

**5.** In essence, this test mirrors the requirements of Section 504 of the Rehabilitation Act and the ADA, both of which will be discussed later in this opinion.

tory application of the regulation which governs the academic eligibility of the student athletes or to advance any facts or documentation that would tend to negate this accusation leads the Court to conclude that a genuine issue of a material fact remains on this claim.

### C—42 U.S.C. § 12132 and § 504 of the Rehabilitation Act

42 U.S.C. § 12132 of the ADA provides that no qualified individual with a disability "shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." The implementing regulations mandate that a public entity shall

> make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7). Similarly, Section 504 provides that:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).

■ In order to set forth a prima facie case under these statutes, the Plaintiffs must establish that:

(1) Ray Hoot is an individual with a disability;

(2) Other than the identified disability, Ray Hoot is qualified to participate in interscholastic athletics;

(3) The MHSAA is a public entity as defined by the ADA or, alternatively, it is eligible to receive federal financial assistance; and

(4) The MHSAA discriminated against Ray Hoot when it denied him an opportunity to participate in interscholastic athletics.

*See Doherty v. Southern College of Optometry,* 862 F.2d 570 (6th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368 (3rd Cir.1991); *Sharon v. Larson,* 650 F.Supp. 1396 (E.D.Pa. 1986). The applicable regulations define a handicapped person as:

> an individual with a disability who, with or without reasonable modification to rules, policies, or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

28 C.F.R. § 35.104.

Federal regulations also define a qualified individual with a disability as:

> any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

34 C.F.R. § 104.4(j).[6]

■ On the basis of (1) the psychological testing that was conducted subsequent to the filing of this Complaint, (2) the determination of the IEPC, and (3) the affidavit and diagnosis of the examining psychologist, Geoff Krone, any challenge to a conclusion that Ray Hoot has a learning disability would be unreasonable.

■ An individual is "otherwise qualified" within the meaning of Section 504 of the Rehabilitation Act if he is able to meet all of a program's necessary requirements in spite of the handicap. *Doherty,* 862 F.2d at 574.

---

**6.** "Disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having an impairment." 28 C.F.R. § 35.104. A mental impairment encompasses any mental or psychological disorder such as a specific learning disability. *Id.* at § 35.104(1)(i)(B). "*Handicap* means any condition or characteristic that renders a person a handicapped person as defined by [34 C.F.R. § 104.4(j)]." 34 C.F.R. § 104.4(*l*).

Before a court may conclude that an individual is not "otherwise qualified," it must determine "whether some 'reasonable accommodation' is available to satisfy the legitimate interests of both the grantee and the handicapped person." *Id.* at 575 (citations omitted).

The MHSAA, noting that Ray Hoot has participated in athletics in the past notwithstanding his disability, contends that he was not "otherwise qualified" because absenteeism from the classroom was the reason for his failing grades. However, the MHSAA fails to point out that Ray Hoot attended school during the summer immediately preceding his junior year in order to become eligible for athletic competition.

None of the parties challenge the MHSAA's assertion that Ray Hoot is intellectually capable of obtaining good grades. However, it is the cause of his behavioral problems which represents the division of opinion among the principals in this lawsuit. It is the Plaintiffs' position that his learning disability has nothing to do with his ability to compete in interscholastic athletics. In essence, they maintain that Ray Hoot satisfies the "otherwise qualified" requirement, in that this Court could easily conclude that he is a capable athlete if the disability which prohibited him from obtaining the necessary academic credits to participate in interscholastic sports was ignored. After a review of the record on this issue, the Court cannot conclude with any certainty that a jury would find that Ray Hoot was not "otherwise qualified." Hence, the existence of this genuine issue of a material fact precludes the entry of any dispositive order on this point.

The MHSAA asserts that it does not receive federal or state funds. The Plaintiffs have not produced any evidence which challenges this representation. However, they do contend that the MHSAA falls within the definition of a "public entity" in the ADA which includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

Whether an athletic association constitutes a "public entity" under the ADA is a question of first impression for this Court. The Plaintiffs urge the Court to construe "public entity," as found in the ADA, as expansively as other courts have interpreted "state actor" under 42 U.S.C. § 1983. In their opinion, both of these federal statutes have a mutually identical purpose of eliminating violations of an individual's constitutional rights, including discrimination.

The MHSAA is a private, nonprofit association that is sanctioned by state law. Mich. Comp.Laws Ann. § 380.1289(2) provides that

[a]n association established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools shall be the official association of the state. The association shall be responsible for the adoption and enforcement of regulations relative to eligibility of pupils in schools for participation in interscholastic athletic events, contests, or tournaments.

Seizing upon the fact that "virtually every public and private secondary school in Michigan is a member of the MHSAA" and the statutory characterization of the organization as an "official association of the state," the Michigan Court of Appeals determined that the MHSAA was a state actor for purposes of an equal protection analysis.[7] *Berschback v. Grosse Pointe Public School Dist.,* 154 Mich.App. 102, 110–11, 397 N.W.2d 234 (1986). However, this adjudication of the MHSAA as a state actor does not automatically make it a public entity. Rather, it must be an agency or instrumentality of the state. 42 U.S.C. § 12131(1). The MHSAA was created by a Michigan statute which authorizes a representative of the state board to become an ex officio member of the MHSAA's governing board with the same rights and privileges of other members of the governing board. Mich.Comp.Laws Ann. 380.1289(1). This organization is composed primarily of public schools and frequently uses public facilities for its athletic competition. Thus, MHSAA is intertwined with state instrumentalities whose participation is significant, al-

---

7. During the oral arguments, the MHSAA indicated that it does not dispute its status as a state actor for the purpose of an equal protection analysis.

beit not exclusive. These factors, in combination with the statutory statement that it is the "official association of the state," lead this Court to believe that the MHSAA may be considered to be an instrumentality of the state.

The MHSAA points to an opinion in 1986 by Michigan Attorney General Frank J. Kelly who opined that it is not a public body, as defined by Mich.Comp.Laws Ann. § 15.261 et seq., for the purpose of the Open Meetings Act. However, this opinion has little persuasive value for several reasons. Initially and without addressing the correctness of the Michigan Attorney General's conclusions, this Court notes that his opinion is not binding precedent. In addition, the opinion provides little guidance in the absence of any supporting case law. Next, this Court finds no reason to assume that the definition of a "public body" within the context of a state statute on opening meetings law is synonymous with the definition of a "public entity" in relation to the ADA, a federal statute which was enacted in an effort to eliminate invidious discrimination.

Mich.Comp.Laws Ann. § 15.262(a) defines a "public body" as used in the act as:

> any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, which is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function....

In contrast, the ADA defines a "public entity" more broadly: "The term 'public entity' means—(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a state or States or local government...." 42 U.S.C. § 12131(1). The ADA does not require the entity to be a legislative or governing body. Any instrumentality of the state must comply with the ADA.

Based on the factual and legal evidence in the record, the Court cannot determine, with any degree of certainty, whether the MHSAA is, or is not, a public entity. Consequently, a genuine issue of a material fact exists on this issue.

The final issue is whether the MHSAA discriminated against Ray Hoot when they denied him an opportunity to participate in interscholastic athletics. The ADA and § 504 regulations provide that a public entity may not:

> [a]id or perpetuate discrimination against a qualified handicapped person by providing significant assistance to any agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the public entity's program.

28 C.F.R. § 35.130(b)(1)(v); 34 C.F.R. § 104.4(b)(i)(v). In the present case, the Court has not resolved the issue as to whether the Milan School District discriminated against Ray Hoot by failing to accommodate an emotional disability. The Plaintiffs argue without challenge that "in failing to so accommodate his disability, the MHSAA would be violating the ADA and Section 504 by 'aiding and perpetuating' [the Milan School District's] discriminatory actions." (Plaintiffs' Response at 8.)

## IV

Having thoroughly reviewed the record and all of the legal arguments that have been advanced by both parties, this Court concludes that a genuine issue of material facts exists as to each count within the Complaint. While discovery and an answer may shed light on some of the factual issues, the MHSAA's Motion for Summary Judgment must be denied without prejudice. No costs.

IT IS SO ORDERED.