ORDER
 

 SAM H. BELL, District Judge.
 

 Currently before the court is the motion of Plaintiff Dru Rhodes for a preliminary injunction enjoining Defendants Ohio High School Athletic Association (OHSAA) and The Catholic Diocese of Youngstown (the Diocese) from enforcing the OHSAA’s “eight consecutive semester” rule which would otherwise preclude Plaintiff from participating on his high school football team. The court took evidence and heard argument on this matter in a hearing held Thursday, August 22, 1996. The parties have also favored the court with briefs on the question, and the court is now well-prepared to issue its findings.
 

 I. Background
 

 Plaintiff Dru Rhodes is an eighteen year old student in his senior year at St. Thomas Aquinas High School, a school owned and operated by the Defendant Diocese. In 1987, while Dru was in the fourth grade, he was diagnosed with learning disabilities, including Attention Deficit Disorder. At that time he began receiving special services for his disability through the North Canton City School District.
 

 Prior to Dru’s freshman year in high school, he enrolled at Western Reserve Academy where Dru and his parents believed he could continue his personalized educational program. While at Western Reserve, Dru also played on the school football team. As a private boarding school, the Academy was not required to provide accommodations for Plaintiffs learning disabilities, nonetheless, he did receive out of class attention from his teachers and from his headmaster, who oversaw Plaintiffs studying for at least a couple of hours each week. While enrolled there, Dru’s scholastic performance took a decidedly downward turn, and he now disputes the quality of the out-of-class attention that he received, saying that it fell far short of the tutoring which his disability requires. That year, Plaintiffs grade average was only 2.5 on 7 point scale, and he earned only one credit toward graduation. The student was informed that he would not be asked back to Western Reserve for the 1993-94 school year.
 

 Consequently, in the fall of 1993 Dru Rhodes enrolled as a freshman in St. Thomas Aquinas High School. The school determined that Dru was academically ineligible to play football that fall semester because of his failing marks the year before. Fortunately, Dru thrived at St. Thomas where he received tutoring and other assistance for his disabilities; his present cumulative grade average is 2.633 on a 4 point scale. Dru has been involved in athletics since his second semester at St. Thomas.
 

 The 1996-97 school year will mark Dru Rhodes’s fifth and senior year in high school. It will also mark his ninth and tenth high school semesters. In the present fall semester, Dru would like to compete on the school football team, but he has been denied that privilege pursuant to an OHSAA rule which states: “After a student completes the eighth grade, the student shall be eligible [to compete in high school athletics] for a period not to exceed eight semesters taken in order of attendance, whether the student participates or not.” (OHSAA Rule 4-3-4, docket #4, ex. 1.) Although Dru has competed in only seven semesters of high school athletics, he has already been enrolled in high school for eight consecutive semesters, thus, according to the rule, Dru’s athletic eligibility has expired.
 

 Dru and his parents sought relief from the rule through the OHSAA’s waiver and appeal
 
 *587
 
 procedures, first requesting a waiver from the Commissioner of the OHSAA, Clair Muscaro. After the request was denied, Dru appealed to the OHSAA Board of Control who, after a hearing, denied Dru’s appeal on June 13, 1996. A little over two months later, or twelve days before the first scheduled football game of the season, Dru Rhodes filed the instant cause of action in which he seeks an emergency injunction to protect him from what he claims are OHSAA violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and Ohio Revised Code Section 4112.01 et seq. Defendant OHSAA denies any violation of law and opposes the Plaintiffs motion. The Defendant Diocese is a “friendly” defendant because, according to counsel at the hearing, the Diocese supports Dru Rhodes’s claim insofar as it would not subject the Diocese or St. Thomas to an OHSAA penalty. The court will therefore consider the instant motion primarily insofar as it relates to OH-SAA’s enforcement of its rule.
 

 II. Analysis
 

 It is well established that when considering a motion for a preliminary injunction, the court must address the following factors:
 

 (A) Whether the party seeking the order has shown a substantial likelihood of success on the merits;
 

 (B) Whether the party seeking the order will suffer irreparable harm absent the injunction;
 

 (C) Whether the order will cause others to suffer substantial harm; and
 

 (D) Whether the public interest would be served by injunctive relief.
 

 Golden v. Kelsey-Hayes Co.,
 
 73 F.3d 648, 653 (6th Cir.1996),
 
 petitions for cert. filed,
 
 64 USLW 3727 (U.S. April 17, 1996) (No. 95-1674), 64 USLW 3795 (U.S. May 17, 1996) (No. 95-1884);
 
 Forry, Inc. v. Neundorfer, Inc.,
 
 837 F.2d 259, 262 (6th Cir.1988);
 
 North Avondale Neighborhood Ass’n v. Cincinnati Metro. Hous. Auth.,
 
 464 F.2d 486, 488 (6th Cir.1972);
 
 Reynolds v. International Amarteur Athletic Fed’n,
 
 841 F.Supp. 1444, 1454 (S.D.Ohio 1992);
 
 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer,
 
 816 F.Supp. 1242, 1246 (N.D.Ohio, E.D.1992). No single factor is dispositive; rather, the court must balance them collectively to determine whether an injunction should issue.
 
 In re DeLorean Motor Co.,
 
 755 F.2d 1223, 1229 (6th Cir.1985).
 

 A Substantial Likelihood of Success on the MeHts.
 

 1. Applicability of the I.D.E.A.
 

 The Plaintiff has based his argument on three separate grounds which the court shall consider in turn. First, however, the court must address the Defendant’s argument that the Plaintiffs claims are not properly before the court because Dru Rhodes has not exhausted his administrative remedies in accordance with the Individuals with Disabilities Education Act (I.D.E.A.), 20 U.S.C. Section 1415. That Act, also known as the Education of the Handicapped Act, requires that states receiving certain federal financial assistance establish procedures “to assure that handicapped children ... are guaranteed procedural safeguards with respect to the provision of free appropriate public edueation[.]” 20 U.S.C. § 1415(a). The I.D.E.A. then specifies “with painstaking care” the minimum requisites for due process in that administrative context.
 
 Id.; Crocker v. Tennessee Secondary Sch. Athletic Ass’n.,
 
 873 F.2d 933, 934 (6th Cir.1989). Ohio has since implemented its own “Impartial Due Process Hearing” regulations in accordance with the federal mandate.
 
 See
 
 Ohio Administrative Code § 3301-51-02(G). Before a student can bring a claim in either Federal court or state municipal court, he or she must exhaust the state administrative hearing process. 20 U.S.C. § 1425(e)(2);
 
 Crocker,
 
 873 F.2d at 935.
 

 In the instant case, it is clear that Plaintiff Rhodes has not subjected his claim to Ohio’s Impartial Due Process Hearing procedure. However, Rhodes argues that the exhaustion requirement and, indeed, the entire I.D.E.A. do not apply to him. Plaintiff relies on the terms of the statute which state that the I.D.E.A. governs only those who seek “safeguards with respect to the provision of
 
 free appropriate public
 
 education[.]” (Docket #8, at 2 (quoting 20 U.S.C. § 1415(a)).) Plaintiff Rhodes’s education is neither free
 
 *588
 
 nor public. The court appreciates this difference but finds that the case hinges on a narrower issue: whether Plaintiffs athletic program is pursuant to an Individual Educational Plan (“IEP”). In a Sixth Circuit decision,
 
 Crocker v. TSSAA,
 
 the plaintiff, a disabled student, sought a waiver of a Tennessee Secondary School Athletic Association rule which precluded him from competing in varsity athletics at his public high school by reason of his transfer of schools. The Sixth Circuit dismissed the case because the Court assumed that the “State” Athletic Association’s decision was a part of the Plaintiffs IEP, and because Plaintiff failed to subject this complaint about his IEP to Tennessee’s mandatory administrative review procedure.
 
 Crocker,
 
 873 F.2d at 937.
 

 In the instant case, Plaintiff attended a private school that has chosen to subject itself to an athletic association to which the state delegates a great deal of authority and, thus, it is likely that the Plaintiffs claim would typically be subject to Ohio’s administrative process. However, there is no evidence in this matter that Rhodes had an IEP in recent history, save for the one implemented in order to aid him in his preparation for the ACT college board examination. Thus, unlike the plaintiff in
 
 Crocker,
 
 Plaintiff Rhodes had no IEP from which to appeal through the Ohio administrative process. To dismiss the instant action for failure to comply with an administrative process which was not open to Plaintiff would be manifestly unjust, and is not compelled by the statute. The court will thus reach the merits of Plaintiffs claims under the Americans with Disabilities Act, 42 U.S.C. Section 12101-12213, and Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. Section 794.
 

 2. Plaintiffs Federal Claims.
 

 The ADA and the Rehabilitation Act both prohibit discrimination against the disabled. In Section 504 of the Rehabilitation Act, Congress declared that “[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal [funding.]” 29 U.S.C. § 794(a). Similarly, the ADA provides that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity,” 42 U.S.C. § 12132, and that “[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who ... operates a place of public accommodation.” 42 U.S.C. § 12182(a). The main difference between the Rehabilitation Act and the ADA is that the coverage of the ADA is broader, extending its prohibition against discrimination to private individuals, including the private owners and operators of places of public accommodation. 42 U.S.C. §§ 12181, 12182;
 
 see also,
 
 42 U.S.C. § 12201(a) (“[N]othing in this chapter shall be construed to apply a lesser standard than [those] applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 et seq.) or the regulations issued ... pursuant to such title.”). Both Acts may be invoked by aggrieved individuals such as Plaintiff. 29 U.S.C. § 796a(2), (same remedies as provided in 42 U.S.C. § 2000d et seq.); 42 U.S.C. § 12188(a)(1), 2000a-3(a).
 

 a. The Rehabilitation Act Claim.
 

 To successfully prosecute a cause of action under the Rehabilitation Act in the instant setting, Plaintiff must prove four elements:
 

 1. That he suffers from a disability;
 

 2. He is otherwise qualified for participation in the program;
 

 3. He is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his disability; and
 

 4. The program or activity is receiving federal funding.
 

 Sandison v. Michigan High Sch. Athletic Ass’n., Inc.,
 
 64 F.3d 1026, 1030-31 (6th Cir. 1995).
 

 
 *589
 
 In
 
 Sandison v. MHSAA,
 
 the Sixth Circuit considered a scenario quite similar to the instant scenario, brought by two nineteen-year-old learning-disabled high school seniors. Like the Plaintiff in the instant case, the two young plaintiffs in
 
 Sandison
 
 were diagnosed with learning disabilities rather early in their school careers. Both were placed in special programs and when they were finally mainstreamed into regular classrooms they were old for their grade. In high school, both plaintiffs ran for the cross country and track teams, but in the May preceding their senior years in high school, both turned nineteen years old. As in the instant case, the plaintiffs’ high schools in
 
 Sandison
 
 were members of a high school athletic association, the MHSAA. A MHSAA regulation forbids students from competing in interscholastic sports after their nineteenth birthday; no waiver of the rule was to be permitted, and none was allowed in the plaintiffs’ cases. The two youths challenged the MHSAA’s enforcement of the regulation as violating,
 
 inter alia,
 
 the ADA and the Rehabilitation Act.
 
 [1]
 

 When addressing the plaintiffs’ Rehabilitation Act claims, the Sixth Circuit considered the third element first, that is, the Court determined that the MHSAA’s “nineteen-year-old rule” could not be classified as a “decision made, solely by reason of each student’s learning disability.”
 
 Sandison,
 
 64 F.3d at 1032. The Court reasoned that under a natural reading of the Act, the MHSAA’s nineteen-year-old rule is neutral with respect to disability.
 
 Id
 
 For example, during the plaintiffs’ first three years of high school, the rule did not preclude them from participation despite their learning disabilities.
 
 Id.
 
 “It was not until they turned nineteen that [the regulation] operated to disqualify them.”
 
 Id.
 
 It was not the students’ disabilities which prevented them from meeting the neutral MHSAA requirement, but rather the passage of time.
 
 Id.
 
 at 1033. Accordingly, it was clear that while the regulation did exclude the plaintiff students from participating in high school athletics, it did not do so “solely by reason of’ their disabilities.
 
 Id.
 
 at 1032,1033.
 

 In the instant case, Defendant OHSAA argues that its “eight consecutive semester rule” is similarly neutral and thus does not exclude Plaintiff Rhodes from participation in interscholastie football “solely by reason of’ his learning disability. This court agrees. The OHSAA regulation, like that of the MHSAA in
 
 Sandison,
 
 did not preclude Plaintiff Rhodes from participating in high school athletics earlier in his high school career, rather it was not until Rhodes entered his fifth, senior year that the rule “operated to disqualify him.”
 
 See id.
 
 Where the students in
 
 Sandison
 
 were held back due to their difficulties in school, so too was Plaintiff Rhodes. However, here as in
 
 Sandison,
 
 it is the passage of time, measured out in semesters, which precludes Plaintiff from competing, not the disability which allegedly caused him to repeat his freshman year. Moreover, the court makes a preliminary finding that Rhodes failed his first freshman year due to the combination of his learning disability and his adjustment to a new and, for him, unpleasant boarding school experience. Thus, the causal connection has not been established between the learning disability and the repeat of Rhodes’s freshman year, let alone the consequent expiration of his eligibility.
 

 The eight consecutive semester rule can be applied to students regardless of disability, and it was so applied here. The court, therefore, finds that the rule cannot be characterized as a decision made
 
 solely
 
 on the basis of Plaintiffs disability. For this reason, Plaintiff Rhodes does not state a cause of action under the Rehabilitation Act, and he has not demonstrated a substantial likelihood of success on that claim.
 

 b. The Americans with Disabilities Act Claims.
 

 The Plaintiff actually brings his ADA claims under two separate, complimentary provisions, 42 U.S.C. Sections 12132 and 12182. The former prohibits discrimination by a “public entity,” the latter by “any person who [operates] a place of public accommodation.” The two provisions are mutually exclusive, but together, encompass nearly ev
 
 *590
 
 ery public and private entity in the country. Nevertheless, Plaintiff Rhodes alleges that Defendant OHSAA is somehow both a private
 
 and
 
 a public entity. Defendant OHSAA argues that it is not a public entity, but does not dispute its private status. The court shall consider the applicability of the two provisions in turn.
 

 The ADA defines the term “public entity” as including “any State or local government” and “any department, agency, special purpose district, or other instrumentality of a State or States or local government.” 42 U.S.C. § 12131. The Defendant OHSAA argues that it is a private, voluntary association not encompassed by this definition of a “public entity” and that it is, therefore, outside the purview of Section 12132. In support of its contention, the OHSAA argues that it receives no public funds, and is governed by its members which consist of both public and private schools. “The actions of publie schools taken in accordance with the OHSAA bylaws,” the OHSAA argues, “do not operate to transform the OHSAA’s conduct into state action.” (Docket #4, at 16-17.) The OH-SAA’s argument is supported by an 1962 Ohio Supreme Court case,
 
 State ex rel OH-SAA v. Judges of the Court of Common Pleas of Stark County,
 
 173 Ohio St. 239, 181 N.E.2d 261 (1962), in which the Court held that Ohio schools may be members of the OHSAA, which it described as an unincorporated voluntary nonprofit
 
 private
 
 foundation.
 
 Id.
 
 at 246, 248-49, 181 N.E.2d 261 (the Court expressly rejected the Ohio Attorney General’s argument that “government regulation of interscholastic athletes in the public schools is desirable and a virtual necessity”).
 

 Plaintiff Rhodes counters that Defendant is an instrumentality of the State of Ohio because schools and facilities in which it carries out all of its functions receive federal assistance, because some coaches and other school employees receive federal financial assistance, and because the OHSAA can sanction publie and private schools for noncomplianee with its rules. (Docket # 8, at 10-11.) Plaintiff cites to a portion of a Sixth Circuit opinion,
 
 Yellow Springs Exempted Village Sch. Dist. Bd. of Educ. v. OHSAA,
 
 647 F.2d 651, 652-53 (1981), in support of its position, but the portion cited by Plaintiff is merely a recap of the findings of the district court below. The Circuit did not adopt these findings; in fact, after its recitation of those findings the Court reversed and remanded the case on wholly independent grounds.
 
 Id. As
 
 a matter of fact, the Court held that because the OHSAA was not a “recipient” of federal funds, and because it does not bear the burden of non-compliance with Title IX, it had no discretion to implement Title IX.
 
 Id.
 
 at 656. Compliance with Title IX was limited to individual schools who are recipients of federal funding.
 
 Id.
 
 Thus, by rejecting the OHSAA’s argument that it obtained indirect discretion pursuant to the delegation of power to it from publie schools receiving federal funding, the Sixth Circuit in
 
 Yellow Springs
 
 actually casts doubt on Plaintiff Rhodes’s argument that OHSAA is an indirect actor or instrumentality of the State in the instant case.
 

 The other case relied upon by Plaintiff to establish the OHSAA’s public status,
 
 Alerding v. OHSAA,
 
 779 F.2d 315 (6th Cir.1985), states in a footnote that the “OHSAA is a state actor for purposes of Section 1983 because Ohio has implicitly delegated to OH-SAA its power to regulate and organize interscholastic athletic activities.”
 
 Id.
 
 at 316 n. 1. The Court offered no other factual findings or reasoning regarding this statement, but relied upon the
 
 Yellow Springs
 
 opinion referred to above which, briefly put, does not support the notion for which the
 
 Alerding
 
 Court cited it.
 

 Nonetheless, this court notes that every available district court opinion which has addressed this very issue has found that a state athletic association is an instrumentality of the State.
 
 See Hoot v. Milan Area Schs.,
 
 853 F.Supp. 243, 251 (E.D.Mich., S.D.1994);
 
 Sandison v. MHSAA,
 
 863 F.Supp. 483, 487 (E.D.Mich., S.D.1994),
 
 rev’d in part,
 
 64 F.3d 1026 (1995);
 
 Dennin v. Connecticut Interscholastic Athletic Conf., Inc.,
 
 913 F.Supp. 663, 670 (D.Conn.1996);
 
 Johnson v. Florida High Sch. Activities Ass’n. Inc.,
 
 899 F.Supp. 579, 583 (M.D.Fla.1995);
 
 Pottgen v. Missouri State High Sch. Activities Ass’n,
 
 857 F.Supp. 654, 662 (E.D.Mo., E.D.1994),
 
 rev’d,
 
 40 F.3d 926 (8th Cir.1995). Of particular interest is
 
 *591
 
 the opinion of the court in
 
 Hoot.
 
 That Court explained that the Michigan High School Athletic Association is an instrumentality of the state because the MHSAA, a private, nonprofit association that is sanctioned by state law, is the “official association” of the state, has a permanent ex officio member of the State Board on its governing board, and is composed of primarily public schools and “frequently uses public facilities” thus intertwining the MHSAA with state instrumentalities.
 
 Hoot,
 
 853 F.Supp. at 250-51.
 

 This court does not have the same quality of evidence before it as did the court in
 
 Hoot,
 
 but weighing that evidence which was submitted on this question in the instant case, the court finds that Plaintiff has proven that the Defendant OHSAA is an instrumentality of the State of Ohio. The evidence tends to show that Ohio has delegated a substantial amount of state authority to the OHSAA: the great majority of OHSAA’s members are public schools, it frequently uses public facilities, and it exercises the ability to sanction public schools for violations of its rules. The OHSAA is thus an instrument of the State and a “public entity” amenable to suit pursuant to Section 12132.
 

 While Defendant does not dispute that Plaintiff’s claim is properly brought pursuant to Section 12182, the court finds to the contrary. In a definitional section, Section 12181(7), Congress has listed a multitude of private entities which are considered to be public accommodations. This list is qualified, however, by the definition of “private entity” which provides that the term encompasses all of those not considered public entities pursuant to 42 U.S.C. § 12132(1). 42 U.S.C. § 12181(6). Taken together, these definitions have been understood to mean that a place of public accommodation must be operated by a private entity.
 
 Sandison
 
 64 F.3d at 1036 (citing 28 C.F.R. § 36.104). Because in the instant case, the court has determined that OHSAA is a public entity, and because a private entity cannot, by definition, also be a public entity,
 
 see
 
 42 U.S.C. § 12181(6), OH-SAA cannot be a private entity. Thus, the court will not analyze Plaintiff’s claim under Section 12182.
 

 i. The Section 12132 Claim.
 

 Again, the ADA as codified at 42 U.S.C. Section 12132, provides that a public entity such as the OHSAA cannot exclude a “qualified individual with a disability” from participation in activities, nor deny him benefits, nor discriminate against him in any way “by reason of such disability.” 42 U.S.C. § 12132.
 

 Under the ADA, a “qualified individual with a disability” means “an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the ... participation in programs or activities provided by a public entity.” 42 U.S.C. § 12131(2). The court is to make factual findings concerning both whether the requirement is essential, and whether some reasonable modification is available which satisfies the legitimate interests of both the Association and Dru Rhodes.
 
 Sandison,
 
 64 F.3d at 1037, 103A-35.
 
 [2]
 

 Here, as in
 
 Sandison,
 
 the Defendant Athletic Association argues that the regulation in question is an “essential” requirement of its program. In that cause, the Sixth Circuit upheld the district court finding that the nineteen-year-old rule was “necessary” and “essential” because the rule advanced two purposes: first, it “safeguards against injury to other players;” and second, it “prevents any unfair competitive advantage that older and larger participants might provide.”
 
 Id.
 
 at 1035. In the instant case, the court finds that the eight consecutive semester rule also promotes at least three important purposes: first, it prevents red-shirting
 
 [3]
 
 of all students, especially those who due to their relatively young age might not be deterred by the nineteen-year-old rule; second, it limits the
 
 *592
 
 level of athletic experience and skill of the players so as to create a more even playing field for the competitors; and third, and particularly, it encourages student-athletes to graduate in four years. The court recognizes the legitimacy of these concerns for an organization which sees its role as supplemental to the education process. However, Plaintiff contests the alleged “essential” nature of the OHSAA rule on the ground that Defendant has allowed waivers of the requirement in the past. Of particular note is the case of a student who, during the school year, was incarcerated and thus unavailable to compete in high school athletics. Later, that student was released without having been convicted, and sought to play football. Under a normal application of OHSAA’s rule, the youth was ineligible because he had already been enrolled in school for eight semesters. An application for waiver was granted by the OHSAA Board, however, and the youth was allowed to compete. Plaintiff asks how a rule which can bend in order to allow an incarcerated student the chance to compete, can be considered too essential to bend in favor of a student with a learning disability.
 

 Ultimately, the court need not decide this issue because Plaintiff has failed to meet a separate requirement of a Section 12132 claim. As in his Rehabilitation Act claim, to successfully assert an ADA claim Plaintiff Rhodes must demonstrate that his exclusion from participation on the football team was “solely by reason of [his disability.]”
 
 Sandison
 
 64 F.3d at 1036. This court has already concluded that Rhodes was excluded because he could not satisfy the eight consecutive semester rule, not because he was disabled. Furthermore, the court finds it unlikely that Plaintiff will be able to establish that his repetition of his freshman year was solely due to his disability, rather than partially due to his disability and partially due to his uncomfortable setting at the boarding school. In short, no causal connection between Plaintiffs disability and OHSAA’s enforcement of its eight consecutive semester rule has been established. For these reasons, the court finds that Plaintiff is not likely to be successful on the merits of his ADA claim.
 

 3. Plaintiff’s State Law Claim.
 

 In his Complaint, Plaintiff Rhodes states Ohio Revised Code Section 4112.01 et seq. as a basis for his claim of discrimination. He restates his claim for the protection offered by that Code provision in his motion for a preliminary injunction, (docket # 3, at 3), but then fails to make any arguments or offer evidence specifically in support of his state law claim. Understandably, Defendant has not addressed that issue of law either. Because it is Plaintiffs duty to demonstrate some likelihood of success on the merits and because he has not attempted to make such a demonstration regarding his state law claim, the court finds that Plaintiff has not demonstrated any likelihood of success on that claim.
 

 The court concludes that Plaintiff has not demonstrated that it is likely he will succeed on the merits of any of his claims in the instant case. This first element of the preliminary injunction paradigm weighs in favor of Defendant OHSAA.
 

 B. Irreparable Harm.
 

 Plaintiff Rhodes has convincingly demonstrated that he will suffer irreparable harm if his motion for an injunction is denied. This is Dru Rhodes’s senior year in high school and possibly his last chance to participate in organized interseholastic athletics. Indeed, Rhodes testified that his ability to compete on the college level will be greatly diminished if he is unable to play football this season. The court finds that Rhodes will suffer irreparable harm in the absence of an injunction requiring OHSAA to waive its eight consecutive semester rule. This factor weighs decidedly in favor of Plaintiff Rhodes.
 

 C. Substantial Harm to Others.
 

 Defendant OHSAA argues that an injunction would injure the “integrity and academic goals of St. Thomas Aquinas High School and the [OHSAA] — and by that is meant all member schools,” and it would “further displace a student athlete on Rhodes’ team and provide[ ] an unfair advantage against Rhodes’ opponents.” (Docket # 4, at 17-18.) It is doubtful that a court order requiring
 
 *593
 
 Defendants to allow Plaintiff to play football would damage the Defendants’ integrity, rather, it seems that upholding a court order could only be seen as a symbol of integrity. Nonetheless, the court agrees with the Defendant that the academic goal of encouraging successful completion of high school in four years would not be served by the injunction. An injunction would also harm the OHSAA’s ability to achieve another of its important goals: limiting “the level of athletic experience and skill of the players so as to create a more even playing field for the competitors.”
 
 (See supra.)
 
 Finally, the court accepts Defendant’s common sense argument that an injunction would displace another student athlete from participation in football. All having been said, the court finds that an injunction would create harm to others and thus, this element weighs in favor of the OHSAA
 

 D. The Public Interest.
 

 Plaintiff believes that the public interest would best be served by an injunction which ensures the right of a disabled student to a complete education, including the ability to participate in athletics. Defendant disagrees, instead offering the view that the public interest is embodied in the regulations of the OHSAA which have been approved by a board which is itself representative of school districts and athletic officials throughout the state. In the end, the court is not required to weigh the rights of the disabled against the voice of the people of Ohio as spoken by the OHSAA, because the court found previously that Plaintiff is unlikely to demonstrate that his disability was the sole cause of his ineligibility under the OHSAA’s rules. The court finds, therefore, that the public interest in upholding the rules established by the OHSAA is greater than its interest in Plaintiff Rhodes’s individual predicament. This factor too, weighs in favor of the Defendant OHSAA.
 

 III. Conclusion
 

 The court finds that Plaintiff is unlikely to succeed on the merits of his claim, that he will suffer irreparable harm if an injunction does not issue, that there is a likelihood of some harm to others if the injunction should issue, and that the public interest disfavors an injunction in the instant case. Accordingly, the court concludes that Plaintiffs request for a preliminary injunction enjoining the Defendants from enforcing OHSAA’s eight consecutive semester rule, should be, and is, DENIED. The OHSAA is free to enforce its rules as it sees fit, in accordance with the law.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Like the Defendant Diocese in the instant case, the defendant schools in
 
 Sandison
 
 did not oppose the plaintiffs but rather offered conditional support for their student athletes.
 

 [2]
 

 . The
 
 Sandison
 
 Court explained that its ADA analysis tracked its analysis under the Rehabilitation Act, and thus, this court will also take guidance from
 
 Sandison
 
 s discussion of the Rehabilitation Act.
 

 [3]
 

 . The court understands this term, red-shirting, to mean holding a student back in a grade level regardless of his or her scholastic performance in order to gain physical and mental maturity which would presumably lead to greater athletic achievement.